### H. E. PAYNE v. W. W. LINDSLEY.

Decided March 10, 1910.

**1.—Conversion—Mortgage.**

In an action for conversion of plaintiff's stock of goods by defendant, who held them under a contract which he claimed to be an absolute sale in discharge of plaintiff's debt to him, the latter claiming it to have been a mortgage, no charge requiring proof of conversion by defendant was necessary. The nature of the claim asserted by him amounted to conversion if the contract was found to be a mortgage.

**2.—Same—Damages.**

In an action for conversion of mortgaged property by the mortgagee, who claimed that the contract was one of absolute sale, the measure of damages was the value of the goods at the time they were transferred less the debt.

Appeal from the District Court of Lamar County. Tried below before Hon. T. D. Montrose.

*Moore & Park,* for appellant.

*Allen & Dohoney* and *B. B. Sturgeon,* for appellee.

HODGES, ASSOCIATE JUSTICE.—This is an action instituted by the appellee for damages for the conversion of a stock of goods. The testimony establishes the following facts: The appellant, Payne, was a merchant doing business in the town of Blossom, in Lamar County. On October 29, 1906, he sold his stock of goods, including some store fixtures, to W. W. Appleton, who was at the time representing himself and the appellee in the purchase. The consideration agreed on was $6,200, payable as follows: $1,000 cash, $1,000 within one week from date of sale, and the balance within thirty days, to be paid from the proceeds of the daily sales. Appleton paid $1,000 in cash, and made other payments on different dates thereafter, but on the 25th of December following still owed $1,698.60. According to the testimony of the appellee, which was not disputed, he furnished the money with which Appleton made the cash payment, and they became partners in the business. On December 25, 1906, Appleton and the appellee made an agreement with the appellant, Payne, by which they turned over to Payne the entire stock of goods then on hand. The sum due Payne at that time, together with some outstanding debts which Appleton and the appellee owed to other parties, amounted to $2,213.60. The testimony is conflicting as to the terms and meaning of the contract by which Payne took possession of the stock of goods. The appellee claims, and so testified, that at that time Appleton was indebted to him in the sum of about $1,500, and that both of them

owed Payne $1,698.60; that the firm also owed debts to other parties, amounting to $674.79, and that the goods were turned over to Payne to secure both debts. He says: "Those goods were turned over to Payne first as security to himself for what we owed, he to get the money out of them. There was an invoice taken when the goods were turned over to him, to find out how much was in the store, to know how much was put over into his hands. That invoice amounted to $7,813.63. The agreement between Payne and myself in regard to the debt I owed him was: he was to get his money first out of the goods; that was to secure himself; and then what was left I was to get what I could out of it. Payne could not dispose of these goods before the 1st day of March, according to the contract. In the meantime it was our object to get buyers and sell it out." He further stated: "I had an option on the goods on or before the 1st day of March to take the goods back by paying the amount which was due Payne, which was estimated to be $2,213.60." There was offered in evidence in that connection the following written instrument: "I will enter into contract to sell on or before March 1, 1907, all unavoidable accidents allowed, all the stock and fixtures and insurance, fixtures to be the same as sold to Appleton, and rent on storehouse and fixtures for the year 1907, for $2,213.60, and will keep all sales and all money spent by the business; and should the cash took in be greater than that spent, then the difference will be allowed on the above amount. But, to the contrary, should it be less, then the difference will be added to the above amount. Taxes for 1907 to be paid by W. W. L." The testimony shows that this instrument was presented by Payne as evidencing the option which he accorded to the appellee and Appleton at the time the goods were turned over to him. With reference to this the appellee testified that, after the contract to deliver the goods to Payne had been made, they discussed the feasibility of getting up a stock company to buy the stock, and Payne suggested that he would give them an option if they so desired. It appears that this instrument was then prepared and accepted. Payne testified that, previous to the 25th day of December, 1906, he had not received his payments according to the agreement, and was not satisfied with the conduct of the business; that he was sent for by Appleton and went to the store to see him; that Appleton proposed to sell him the stock of goods, which he thought at that time was worth about $5,000; that the indebtedness of the firm to other parties was ascertained to be $674.79. In the presence of Lindsley, the appellee, he accepted Appleton's offer to take the goods, receipt him against the debt and pay the outstanding bills referred to. The following memorandum of the sale was written and assented to by both Appleton and Lindsley: "To buy stock and fixtures from W. W. Lindsley and W. W. Appleton, and insurance on same, for $1,698.60, interest $15, total $1,713.60, and assume the debts for goods received in the house and not paid for, and will pay for goods on the road when received if they prove satisfactory; otherwise I will return to shippers." Then follows the amount in detail due to other creditors. Payne further testified that after the stock had been sold and transferred to him Appleton suggested the practicability of getting up a stock company to buy the

goods, and he told Appleton that if it was so easy to get up a stock company he would give him an option; that then they agreed on the option, and a memorandum of the agreement was written out and assented to by them. Payne further testified that the goods were invoiced by him for the purpose of insurance; that he took down the articles in a small day book as they were called off by persons assisting in taking the invoice, and that the value of the goods as shown by that invoice did not represent their true value; that the stock was not worth over forty cents on the dollar. Payne further testified that, during the time he had charge of the store under their agreement, he put in new goods to the amount of $4,382.64; that this amount was necessary to keep up the stock; that during the months of January and February he sold $1,113 worth of goods; that counting the amount of new goods purchased and the old debt, the exercise of the option would have required plaintiff to pay him approximately $6,500. He also stated that he was willing, ready and able to deliver the stock of goods at any time between December 25, 1906, and the 1st day of March, 1907, had they tendered him the amount due under this contract. The evidence fails to show that the appellee at any time offered or tendered to Payne the amount due according to the terms of the option given. It does show that the appellee, accompanied by his attorney, had a conversation with Payne about the 1st of March regarding the goods; that Payne told them it would take $6,500 to get the stock, and that if they would pay him that amount he would get out. He refused, however, to permit an invoice except on condition that they would deposit $500 as a guaranty that the goods would be taken. This was declined, and shortly thereafter this suit was filed. A trial before a jury resulted in a verdict in favor of the appellee for $1,214.80.

The cause of action asserted by the appellee is a claim for damages for the conversion of property delivered to the appellant as security for the payment of a debt. The defense is that the property was taken in satisfaction of the debt, and not as security. The issues are well defined in both the pleadings and the evidence. The rights of the parties turn upon the terms and construction of the contract made between them on the 25th of December, 1906. If the goods were delivered to Payne as security for his debt, he to dispose of enough of them to satisfy his demand, and then return the remainder to the appellee, Payne was but a mortgagee in possession, having only a special property in the goods, and was charged with the execution of the trust which he had undertaken. On the other hand, if he took the goods in satisfaction of the debt due him by appellee and Appleton, then under the evidence he has been guilty of no wrongful appropriation of the property. The testimony conclusively shows that the appellee failed to avail himself of the option given to repurchase the goods within the time limited in the written contract. The testimony as to the terms of the original contract was conflicting, but the jury settled the conflict in favor of the version given by the appellee. Regarding the possession of Payne as only that of a mortgagee, or pledgee, the exercise by him of any dominion over the property inconsistent with the rights of the mortgagor, or with the relations he justly sustained

to the property, would amount to a conversion if the mortgagor elected to so treat it. The latter might then sue for his damages without tendering the amount due. Lamb v. Reily, 34 N. Y. Supp., 235; Watts v. Johnson, 4 Texas, 315; Lucketts v. Townsend, 3 Texas, 127; Soel v. Hadden, 85 Texas, 188, 19 S. W., 1087; Jones on Pledges, secs. 571-575. The testimony is undisputed that Payne claimed to own the property absolutely, and it was unnecessary to submit the issue of conversion to the jury if they found that he held the goods as security only. Therefore we do not think there was any error in that portion of the court's charge complained of in the first assigned error.

The court gave the following charge on the measure of damages: "If you find for the plaintiff you will allow him the market value of said goods as delivered on or about the 25th day of December, 1906, less the debt due by plaintiff to the defendant and the debts assumed by defendant to pay to other parties for plaintiff at the time of the delivery of said goods." By way of objection to this charge, it is claimed that Payne had a legal right to hold the possession of the goods from the 25th day of December, 1906, at least till March 1st following, and even longer in the event the option given was not taken advantage of; that the proper measure of the appellee's damages, if he was entitled to recover any, would be the value of his interest in the goods on the date last mentioned, and this measure would be the difference in the value of the stock of goods in stock on the 1st day of March, 1907, and the amount due Payne less the amount which Payne had received for goods sold from the time he took charge of the stock until March 1, 1907. Appellee's objection is based upon the assumption that the conversion did not in reality take place till the 1st day of March. The right of the appellee to recover his damages—that is, the difference between the value of the stock of goods and the sum due Payne—arose the instant the conversion took place, and the amount due him should be determined by the value of the goods less the amount due Payne at that time. We see no good reason why March 1st should be selected as the date of the conversion. There was nothing in the original contract of bailment which terminated the right of possession in Payne on that date. According to that agreement, he had the right to continue in possession till he had disposed of enough of the goods to satisfy his demand, or till the same had been paid in other ways. Neither of these contingencies happened at that time. It is true that on March 1st he announced his claim of ownership; but, according to his pleadings and testimony, he dates this hostile claim from the time he first obtained possession of the stock—December 26, 1906. Hence, we may safely assume that it was clearly shown that the conversion took place on that date, and the court properly selected that as the time for determining the value of the goods converted.

The propositions presented in the remaining assignments are sufficiently involved in the questions we have discussed to dispense with any further consideration of them.

The judgment of the District Court is affirmed.

*Affirmed.*