## WALLACE v. RENFROE.
### No. 3780.

Court of Civil Appeals of Texas. El Paso.
Jan. 12, 1939.

Rehearing Denied Feb. 2, 1939.

Ditzler H. Jones and William J. Fuller, Jr., both of Uvalde, for appellant.

Atlas Jones, of Uvalde, for appellee.

NEALON, Chief Justice.

Appellant Wallace appeals from a judgment in favor of appellee Renfroe in the sum of $1288.40. Renfroe, plaintiff below, alleged that on April 12, 1937 Wallace, defendant below, owned a grazing lease upon 3200 acres of land in Uvalde and Edwards Counties, known as the Jeffers Ranch, which lease had eighteen days over and above two and one-half years to run;

that Wallace also owned four cows and certain described lambs, bucks, nanny-goats and kids, which he was pasturing upon said land; that under the terms of the lease Wallace was to pay rental at the rate of 45 cents per acre per year; that the land was subject to sale on ninety days' notice and the lease would be terminated by a sale; that under the terms of the agreement between Renfroe and Wallace the former was to pay the latter a profit of 10 cents per acre per year upon the lease, or $800, provided the lease was not terminated by sale before the end of the contract period, the first six months' profit of $160 to be paid by Wallace out of a "down payment" of $1000 which Renfroe was to and did pay Wallace on April 12, 1937; that Renfroe was to assume the rental obligations called for by the lease; that out of said down payment of $1000 Wallace was to pay $720 rental to the landowner and apply the balance of $120 upon the price of the livestock. Interest was to be charged at the rate of six and one-half percent per annum from April 12, 1937 on the balance due upon the price of the livestock which were to be delivered to plaintiff on said ranch on August 12, 1937. The contract was reduced to writing. Separate instruments were drawn respecting the assignment of the lease and the sale of the livestock. Under the provisions of the latter instrument it was provided that Renfroe should pay $1000 June 1, 1937 and the balance on or before August 12, 1937; that Wallace was to retain control over the livestock until "this agreement is fulfilled," and to have the right to pasture the livestock on said land until the fulfillment of the contract. It was further provided that "in the event of a default of payment of same the said William Wallace has the right to move or sell any or all of said sheep and goats." The assignment of the lease recited that the consideration therefor was "$800 to me (William Wallace) in hand paid."

Plaintiff alleged that on or about May 12, 1937 defendant wrongfully took said four cows (which, by the way, were not mentioned in the bill of sale or contract of sale) from said ranch and wrongfully sold the same for over $100 and converted the price received to his own use. Plaintiff claimed credit upon his debt to this extent. Plaintiff alleged further that during the months of April and May, 1937 defendant rounded up said livestock and counted the same and delivered them to plaintiff on said ranch; that plaintiff there accepted and branded the same with his own brand, with the knowledge and consent of defendant, and looked after them upon the ranch as if they were his own, and that it was orally understood between the parties that plaintiff then became obligated to pay defendant for the number of livestock so delivered and to have the duty of caring for them, together with the obligation to pay the expense of caring for and looking after them, and that he thereby became the owner of said livestock; that he became indebted for the livestock as of April 12, 1937 in the total sum of $6,322, less the amount that he should have been credited out of the payment of $1000 made April 12, 1937; that shortly prior to June 1, 1937 defendant requested him as a favor to pay the balance due upon said sheep and goats, and plaintiff attempted to raise enough money to do so, but was unable to accomplish his purpose, and thereafter, on June 11, 1937 he left with R. H. Alvey of the Uvalde Production Credit Association, which held a lien upon said animals, a check for $1000, payable to defendant and said Association; that Alvey offered the check to defendant, but defendant wrongfully refused to accept it; that on June 13, 1937, defendant came to said ranch and wrongfully and forcibly rounded up said sheep and goats and moved the same to another ranch four miles distant over the protest of plaintiff and his employee, thereby converting the animals to his own use; that plaintiff was able to pay for the sheep and goats before August 12, 1937, and would have done so but for said wrongful removal and conversion.

The cause was submitted to a jury upon special issues, and, upon conflicting testimony, answers returned substantially as follows: (1) That the recited consideration of $800 stated in the lease assignment was not the true consideration agreed upon by the parties; (2) but that plaintiff was to pay defendant $160 out of the $1000 payment made April 12, 1937, as defendant's profit for the first six months of the lease of the ranch, and (3) $160 at the time of each semi-annual payment upon the lease until he paid $800 profit; (4) that plaintiff was to cease paying the defendant a profit on the lease if the lease was terminated by a sale of the ranch; (5) that defendant was to pay for plaintiff the $720 due on the lease on May 1, 1937 out of the $1000 paid April 12, 1937; (6) that during April and May, 1937 defendant delivered the sheep

and goats to plaintiff, (7) and it was agreed between the parties that plaintiff should have the duty of looking after said livestock and the obligation of paying all expense in caring for it; (8) that defendant agreed to sell plaintiff four cows for $100; (9) that on June 13, 1937 the market value of the sheep was $4,680, (10) the market value of the goats $1600, and (11) the market value of the four cows in question in May, 1937 was $25; (12) that plaintiff provided food for boarding defendant and his hands during April, May and June (13) at a reasonable expense of $20; (14) that prior to June 9, 1937, defendant induced plaintiff to try to raise all of the money owing for the sheep and goats. The court "found from uncontroverted facts and from the verdict of the jury" that on June 13, 1937 plaintiff was still indebted to defendant in the sum of $5598.46; that the total value of the sheep and goats converted by defendant to his own use was $6280; that defendant was indebted to plaintiff for the net proceeds of certain wool sold before October, 1937 in the sum of $564.58.

It was undisputed that defendant did not pay the landlord $720 out of the original payment and that Renfroe, in order to hold the lease, paid the landlord $720 additional—$435 of which was returned by the landlord when the lease was terminated by sale of the land.

## Opinion.

■ Appellee objects to the consideration of any of appellant's assignments upon the ground that they do not comply with the provisions of Art. 1844, Revised Civil Statutes as amended, Vernon's Ann.Civ.St. Art. 1844, or with Rules 24, 25 and 26 for the government of the Courts of Civil Appeals. It is unnecessary to go into the question thus raised, for appellee has in his brief alleged that the appeal was taken for delay, and that there was no sufficient cause for taking the appeal, and has prayed for the assessment of ten percent damages as provided in Art. 1860, Revised Civil Statutes. The suggestion of delay opens the entire record and requires reversal for any material error disclosed, whether assigned or not. Clem v. Fulghum, Tex.Civ. App., 37 S.W.2d 201 and cases cited; Oilmen's Reciprocal Ass'n v. Coe, Tex.Civ. App., 6 S.W.2d 1046; Floboots Corp'n v. Teas, Tex.Civ.App., 110 S.W.2d 180.

After assigning errors generally upon the ground that the verdict and judgment were contrary to the evidence and the law, appellant challenged the action of the court in overruling demurrers to plaintiff's first amended original petition and to the court's action in refusing to instruct a verdict in behalf of defendant.

■ The substance of plaintiff's pleading has been stated. We think the allegation that defendant converted to his own use $720 that should have been paid the landlord out of the original payment together with the payment of $120 cash then made on the contract price of the animals and the allegations of delivery of the livestock to plaintiff upon the latter's assuming new obligations, and of the subsequent conduct of defendant in forcibly seizing and removing the livestock under claim of absolute ownership, together with the allegation that plaintiff's refusal and failure to pay the balance of the contract price on or before August 12, 1937 was because of the said conduct and claims of defendant, were sufficient to withstand defendant's demurrers and exceptions.

■ Our next inquiry is, Did plaintiff prove a valid legal excuse for his failure to make or tender payment? Though admitting that the contract by which defendant sold the livestock to plaintiff created a lien for the unpaid purchase price with the right to possession in the mortgagee, plaintiff insisted that by subsequent agreement entailing additional expense and duties upon plaintiff, the livestock was actually surrendered into the possession of plaintiff and thereafter over his protest forcibly taken from him by defendant and converted by defendant to his own use, and that by his acts defendant repudiated the sale. If it be true that Wallace, who was a mere mortgagee or pledgee, exercised dominion over the property inconsistent with the rights of Renfroe or to the relation he justly sustained to the property, such conduct would amount to a conversion, if Renfroe so elected to treat it, and Renfroe might then sue for damages without tendering the amount due. Payne v. Lindsley, 59 Tex.Civ.App. 545, 126 S.W. 329, citing Lamb v. O'Reilly, 13 Misc. 212, 34 N.Y.S. 235; Watts v. Johnson, 4 Tex. 311, 315; Luckett v. Townsend, 3 Tex. 119, 127, 49 Am.Dec. 723; Soell v. Hadden, 85 Tex. 182, 188, 19 S.W. 1087; Jones on Pledges, §§ 571–575. The evidence upon this issue was conflicting, Renfroe testifying delivery was made and control of the property was surrendered to him prior to June 1,

1937 when a payment of $1000 was to be made, and Wallace testifying to the contrary. The jury found in favor of Renfroe upon the issue. The evidence was sufficient to support findings that the property was taken over the objection and protest of Renfroe, and that at the time of taking it Wallace was armed and prepared to enforce his demands. That Renfroe was likewise armed does not affect the issue, though it may emphasize the seriousness of Renfroe's objection. If the property had in fact been surrendered to the mortgagor, possession obtained by mortgagee through the use of violence was unlawful and constituted a trespass. Loftus v. Maxey, 73 Tex. 242, 11 S.W. 272; Gillett v. Moody, Tex.Civ.App., 54 S.W. 35. The evidence of Wallace justified a finding that Wallace claimed the right of possession as owner, and not merely as pledgee or mortgagee. Circumstances in evidence warrant the same conclusion. Prior to the seizure of the livestock by Wallace, Renfroe had deposited with R. H. Alvey his check for $1,000, payable to Wallace and the Uvalde Production Company, of which Alvey was secretary-treasurer and manager, with the request that the check be delivered to Mr. Wallace as a payment upon the contract price. Alvey's corporation carried a loan on the livestock involved. The loan was secured by chattel mortgage. No question was raised as to the value of the check, nor was objection made to payment by check. It was satisfactory to Mr. Alvey that the entire amount should be paid to Mr. Wallace if he so desired, though he would expect the proceeds to be applied upon the loan due his Company. Wallace was notified of the transaction but refused to accept the check, which was later returned to Mr. Renfroe. Wallace had told Alvey that the payment was past due and he did not intend to accept it. Renfroe, therefore, had the right to sue without making previous tender of the purchase money, and Wallace had the right to recoup his debt in the damages. Luckett v. Townsend, supra; Soell v. Hadden, supra; Greenwall v. Markowitz, 97 Tex. 479, 485, 79 S.W. 1069, 65 L.R.A. 302.

Assignments challenging the correctness of the court's rulings in permitting parol testimony as to the real consideration for the assignment of the lease are overruled. The discussed clauses of the contract referred to alleged past transactions and not to promises of future payments. These rulings do not constitute reversible error. Cochell v. Cawthon, Tex.Civ.App., 110 S.W.2d 636 and cases cited; Taylor v. Merrill, 64 Tex. 494; Johnson v. Elmen, 94 Tex. 168, 59 S.W. 253, 52 L.R.A. 162, 86 Am.St.Rep. 845.

Appellant's assignment challenging the trial court's action in permitting parol evidence of a subsequent oral agreement, made upon a valid consideration and modifying the prior written agreement is overruled. Heatherly v. Record, 12 Tex. 49; Baughn v. Hensley, Tex.Civ.App., 14 S.W. 2d 368; McCormick & Ray on Texas Law of Evidence, Sec. 745.

It is interesting to note the practical result of the case. Defendant received from plaintiff $1000 in cash and the use of a pasture for which plaintiff paid $285, which defendant would have been required to pay had there been no contract between the parties hereto. The total of these two payments is $1285. The judgment is for $1288—just $3 more than the amount of cash paid by plaintiff of which defendant received the benefit.

Assignments of error not discussed have been considered and are overruled.

We are not prepared to say that the appeal was filed for delay only. Appellee's prayer for damages is therefore denied. The judgment of the District Court is affirmed.