**MAJOR APPLIANCE COMPANY, Inc.,**
**Appellant,**

v.

**GIBSON REFRIGERATOR SALES COR-**
**PORATION and Hupp Corporation,**
**Appellees.**

**HUPP CORPORATION, Appellant,**

v.

**MAJOR APPLIANCE COMPANY, Inc.,**
**Appellee.**

**No. 16493.**

United States Court of Appeals
Fifth Circuit.

April 8, 1958.

Fritz Lyne, Lyne, Blanchette & Smith, Gerry N. Wren, Dallas, Tex., for Major Appliance Co., Inc.,

J. W. Crosland, Robert F. Ritchie, Ritchie, Ritchie & Crosland, Dallas, Tex., for Hupp Corp.

Before CAMERON, JONES and WISDOM, Circuit Judges.

CAMERON, Circuit Judge.

Decision of this appeal will turn upon the question whether appellee Hupp Corporation [1] converted merchandise shipped and invoiced by it to appellant Major Appliance Company, Inc.,[2] but delivered to a warehouse company occupying space in Major's place of business, when Hupp retained only a lien on said merchandise to secure money owed to it by Major. Alleging that Hupp had, on or about July 15, 1956, removed and converted to its own possession and use, said merchandise of the value of $253,000.00, Major[3] sued Hupp for damages aggregating more than a half million dollars, alleged to include loss of profits, interest, destruc-

1. It was stipulated that, as of April 30, 1956, appellee Gibson sold and assigned to appellee Hupp all of its assets and the use of the name Hupp herein will include both of said companies and Gibson Refrigerator Company unless otherwise indicated.

2. Lee H. Skillman, doing business as Major Appliance Company, on April 3, 1956, transferred to appellee Major Appliance Company, Inc. all of his assets and, as we have this day held in case No. 16459, Major Appliance Company, Inc., assumed all of his liabilities. The word Major when used herein will refer to the appellant corporation and to Skillman operating the proprietorship, unless otherwise noted.

3. Major was adjudicated bankrupt prior to the filing of this civil action, but it was

tion of its business, money wrongfully collected by Hupp, and punitive damages.

Hupp answered admitting that it "had Lawrence Warehouse release to it all of the merchandise * * *" involved in this action, and that said merchandise was by it removed to a warehouse which became the place of business of Gibson Refrigerator Company, said merchandise having a fair market value of $201,318.-41; but insisted that Major had never tendered payment for the merchandise and that it was ready, willing and able at all times "to redeliver said merchandise to plaintiff [Major] provided plaintiff will pay defendant Hupp the sum of $201,318.41 therefor."

Hupp also filed a second defense in which it gave a history of its dealings with Major, reflecting a constantly deteriorating financial condition on the part of Major, reciting that Major was delinquent in payments due Hupp included in which were a number of bad checks; that Major had for a long time been selling its merchandise below cost and had granted rebates to certain of its dealers; that an audit agreed upon between the parties showed that Major was hopelessly insolvent, as the result of all of which Major was advised that Hupp was looking for another distributor for its products in the Dallas area and, upon its failure to find one, that it would open its own distributorship.

Hupp further filed a counterclaim against Major including trade acceptances aggregating $132,736.58 and open accounts aggregating $166,679.27 due by the proprietorship prior to the warehousing arrangement, and an amount of $201,318.41 due for the merchandise which Hupp took possession of and which formed the basis of the conversion claim.

The District Court, sitting without jury, entered judgment dismissing Major's complaint upon the merits and denying all relief demanded, said judgment being predicated upon findings of fact pertinent portions of which are set forth in the margin.[4]

We think that the court's finding, italicized in the above quotation, against Major's claim of conversion was erroneous as a matter of law. The rights of the parties with respect to the goods forming the subject of the alleged conversion were fixed by a written instrument whose meaning must be determined in the light of the relationship of the parties and the construction of the contract by them as reflected in their course of dealing under it.

Major was engaged in the appliance business in Dallas, Texas, was Hupp's distributor in the surrounding area, and Hupp had shipped large quantities of its manufactured products such as refrigerators and air conditioning units to Major on open account. This account had become greatly in arrears, and on November 25, 1955, Hupp and Major entered into a written agreement under which all merchandise sold to Major was to be placed in the custody of Lawrence Warehouse Company.[5] The "warehouse" of Lawrence consisted of a portion of Major's place of business which was separated by a chicken-wire partition wherein the merchandise was placed under lock

begun and prosecuted under order of the referee in bankruptcy.

4. "They [Major] were a patron and customer of [Hupp] * * * and when [Major] ordered goods from * * * [Hupp], such goods were not sent direct to [Major] * * * but was sent to a warehouse in Dallas. A contract between * * * [Major] and * * * [Hupp] provided for such ordered stock to remain as the seller's by right of a lien upon them until they were paid for, or ordered to be turned over by the warehouse company to the one who purchased them, towit [Major]. * * *

"The defendant [Hupp] exercising its right in and to that merchandise until it was paid for, moved the merchandise from the warehouse to another warehouse. * * *

"*The claim of the plaintiff [Major] for conversion* and the claim for reduction of earnings and the claim for assignment and the claim for exemplary damages, which is the most astonishing claim made by the plaintiff, are all found against the plaintiff by the defendant * * *." [Emphasis added.]

5. The agreement, executed on a printed

but was readily available for Major's salesmen to display and offer for sale to its customers. All shipments were invoiced as "Sold to Major Appliance Company, 1532 Edison Street, Dallas, Texas, shipped to Major Appliance Company Care of Lawrence Warehouse No. 94 secured distribution plan No. 1 * *." Appearing on each invoice was this notation: "Due 9-29-56 unless released prior to that date."

By April 3, 1956, Major was indebted to Hupp in the sum of $254,203.77 for merchandise delivered prior to that date. At that time the Major corporation took over the assets and assumed the liabilities of the Major proprietorship, and it was agreed that Hupp would thereafter permit delivery by Lawrence to Major only of merchandise which was paid for in cash or was covered by trade acceptances meeting Hupp's requirements and which Major assigned to it.

By May 21, 1956, Hupp had become so apprehensive of its ability to collect the large amount due it by Major that it

---

form of the warehouse company, is copied in full as follows:

"Lawrence Warehouse Company
"Secured Distribution
"Agreement—Plan 1

"Whereas Gibson Refrigerator Company, Inc., Greenville, Mich. hereinafter referred to as 'Seller' desires to sell to Lee H. Skillman D/B/A Major Appliance Company, Dallas, Texas, hereinafter called 'Buyer', and Buyer desires to purchase from Seller certain merchandise used by Buyer in its business; and

"Whereas Seller is unwilling to sell to Buyer such merchandise except upon a basis whereby Seller is guaranteed and secured with respect to the purchase price, or a part thereof; and

"Whereas Buyer desires, in order to furnish as security for the payment of the purchase price, or any part thereof, to pledge merchandise received from Seller; and

"Whereas Seller is willing to accept as security for the payment of such purchase price, or any part thereof, a pledge of merchandise sold, provided that such pledged merchandise shall be deposited with the Lawrence Warehouse Company (hereinafter called 'Lawrence') and provided that Lawrence shall issue to Seller its non-negotiable warehouse receipts representing merchandise so deposited with it and so pledged:

"Now, Therefore, It Is Hereby Agreed by and between Buyer and Seller:

"1. That Seller will ship to Buyer at its discretion such merchandise and goods as shall be ordered by the Buyer.

"2. That Buyer shall have no right, title or interest in and to said goods or merchandise prior to the time that the same shall have been delivered by Buyer to Lawrence and Lawrence, at the request of Buyer, shall have issued to Seller its non-negotiable warehouse receipts evidencing the deposit of said goods in Lawrence's warehouse.

"3. Upon such deposit with Lawrence and upon issuance of the non-negotiable warehouse receipt of Lawrence to Seller any right, title or interest which Buyer may have or acquire in and to said goods shall be subject at all times to the obligations of Lawrence to deliver said goods from the warehouse only upon the instructions of Seller, which instructions shall from time to time be furnished to Lawrence in accordance with agreements which shall be made between the Seller and the Buyer relating to and providing for the payment by Buyer to Seller of the indebtedness secured by the merchandise covered by warehouse receipts herein referred to.

"4. It is the intent and agreement of the parties hereto that notwithstanding any other agreement or agreements between the parties, Seller shall at all times have, as security for any and all obligations of the Buyer to the Seller for the payment of money or otherwise, a pledgee's interest in any and all goods on deposit in the Lawrence warehouse described as Dallas, Texas Whse No. 94 and represented by non-negotiable warehouse receipts issued to Seller, and that notwithstanding any other such agreement or agreements Buyer hereby agrees that it shall at no time acquire any right, title or interest in and to any such goods except such right, title and interest as is subject to the prior lien and rights of the Seller.

"In Witness Whereof, the parties hereto have executed this Agreement this 25th day of November, 1955.

"Buyer   Lee H. Skillman D/B/A Major Appliance Company
"By (S) Lee H. Skillman (Seal) Lee H. Skillman, Owner
"Seller   Gibson Refrigerator Company, Inc.
"By Frank A. Merigan   (Seal)"

sent two of its representatives who examined Major's books and demanded an audit, which Major's attorney agreed to furnish. Hupp claimed that Major was selling its merchandise below cost and agreed to pursue the arrangement provided for in the Lawrence contract only if its representatives were permitted to set minimum prices on such merchandise, if Major would pay all monies and would assign to Hupp all accounts and contracts arising from the sale of such merchandise, and would agree to the withdrawal of money from the bank by Major only upon the countersignature of one of Hupp's representatives.

The preliminary reports from the audit alarmed Hupp still further, and Hupp demanded that Major's business be removed from the management of its corporate officers and be placed in the hands of an executive committee of three, two of whom would be Hupp's employees. This arrangement was agreed to at a meeting of Major's stockholders.[6]

The executive committee took entire charge of the business June 18, 1956, but Wilson, a stockholder in Major and the one representing its interests, took no active part in the operation and management of the business, although he was free to do so. Further reports from the auditors convinced Hupp that Major was hopelessly insolvent, and it requested Major to file a voluntary petition in bankruptcy, which request was refused.

Between July 15th and 19th Hupp "began transferring the merchandise for which it held warehouse receipts from the Lawrence Warehouse on plaintiff's premises to Metro Warehouse, 9200 Ambassador Road." July 26, 1956, Hupp caused to be placed in a Dallas newspaper the picture of the manager and sales manager "of the new Dallas branch of the Gibson Refrigerator Company * * at 9200 Ambassador Road," under which picture appeared the following headline, "Gibson Refrigerator Opens Dallas Factory Warehouse." The news story fol-

lowing stated that Gibson had set up the new branch to offer better service to dealers and to serve Gibson dealers in Northeast Texas and to sell all of the lines of appliances manufactured by it. Two days before this publication Hupp's two representatives on the executive committee had resigned and had offered their places to any of the Major stockholders or representatives who would accept. Whatever property of Major's remained on the premises was turned back to Major. The new Hupp-Gibson establishment, which took over all of the Hupp merchandise which had been in Major's place of business and which supplanted Major as Hupp's representative, employed the personnel formerly working for Major.

This statement of facts does not purport to cover the large amount of testimony introduced in connection with many issues litigated between the parties for the reason that our decision is confined to the court's finding and judgment with respect to the alleged conversion. We have no doubt that Hupp removed the merchandise from the Lawrence portion of Major's place of business, which constituted the larger part of Major's stock in trade, without authority to do so. Viewed from its four corners, the contract of November 25, 1955, which fixed the rights of all parties, together with the invoices accompanying the transactions under it, constituted a sale of this merchandise to Major secured by a lien in favor of Hupp to secure Major's indebtedness, for the protection of which lien the goods were placed in the possession of Lawrence. Hupp's lien was a charge upon the property, giving it a qualified proprietary interest therein for the satisfaction of the debt.

But such a lien did not confer a general right of property or title upon Hupp, and it had no right to take possession of this property under the circumstances here disclosed and to convert it to its own exclusive use in the opening of a new sales

6. Major argues that the stockholders' meeting was not a legal one because it was not called in conformity with Texas laws and was not attended by all of the stockholders, but we do not find it necessary to decide this point.

agency. Under the terms of its pledge Major had until September 21st to pay for the goods with the right in the meantime to make any sales it could under the terms of the contract. This is so under the general law [7] and under Texas decisions.[8] Since the writing contained no machinery for the enforcement of the lien, Hupp was required to proceed according to Texas laws [9] as supplemented by the common law procedures referred to in Note 7 supra.

■ Our action here is confined to a reversal of the case for an orderly new trial by the court below based upon the postulate that Hupp was guilty of a conversion of the merchandise in question. The court below found at the threshold of its findings that there had been no conversion, and this conclusion on so vital a point necessarily formed a predicate for its meager findings on the other questions involved. We do not pass upon any of the other acts of Hupp which Major asserts as bases for recovery, or any of the defenses set up by Hupp in its pleadings except as herein discussed; and we do not reach the question of what, if any, damages Major is entitled to recover. All of these questions should be passed upon by the District Court, which should make findings of fact as to each of them in detail and enter its conclusions of law, all as required by 52(a), Fed.Rules Civ. Proc. 28 U.S.C.A.

■ We hold further that the District Court should hear Hupp's counterclaims on their merits,[10] as to which we express no opinion. Doubtless Hupp had the option of asserting the counterclaims in this action or of proving them as claims in the bankruptcy court. It would be inequitable and, in our opinion, in derogation of Rule 13, F.R.Civ.P. to proceed in this plenary action without according Hupp the right to assert its counterclaims in the same proceeding if it should desire.

The judgment of the court below is reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.

JONES, Circuit Judge.

I concur in the result.

---

7. See, e. g., 41 Am.Jur., Pledge and Collateral Security, § 27, pp. 603–605:

"By the contract of pledge, the pledgeor does not part with his general right of property in the collateral. The general property therein remains in him; only a special property vests in the pledgee. The pledgee does not acquire an interest in the property except as a security for his debt. * * *

"The general property in the pledge remains in the pledgeor after default as well as prior thereto. The failure of the pledgeor to pay his debt at maturity in no way affects the nature of the pledgee's rights concerning the property pledged, except that he then becomes entitled to proceed to make the security available in the manner prescribed by law or by the terms of the contract. * * * *"

See also ib. § 58, p. 624; § 60, p. 625; § 61, pp. 626–627, and § 62, pp. 627–628; and 33 Am.Jur., Liens, § 2, pp. 419–420, and § 46, p. 441; and 55 Am.Jur., Vendor and Purchaser, § 506, pp. 898–899.

8. Cox v. Rhodes, Tex.Civ.App.1950, 233 S.W.2d 924; Sibley v. Fitch, Tex.Civ. App.1950, 226 S.W.2d 885; Wallace v Renfroe, Tex.Civ.App.1939, 124 S.W. 2d 456; General Motors Acceptance Corp. v. Boyd, Tex.Civ.App.1938, 120 S.W.2d 484; First National Bank of Wichita Falls v. McCamey, 1937, 130 Tex. 148, 105 S.W.2d 879; Payne v. Lindsley, 1910, 59 Tex.Civ.App. 545, 126 S.W. 329.

Hupp cites no authority tending to support its position which was adopted by the court below.

9. Cf. Rule 309, Vernon's Texas Rules of Civil Procedure, superseding 7 Vernon's Civil Statutes, Title 42, Art. 2218.

10. The judgment of the court below recited: "It is further ordered and adjudged that the defendant Hupp Corporation is hereby dismissed." It is apparent from the colloquy taking place between the trial court and counsel when Hupp sought to have this sentence of the judgment clarified by showing that Hupp's counterclaims were dismissed without prejudice; that this is what the court below intended.