**SLONE v. FIRST NAT. BANK OF GORMAN.**
**(No. 522–4200.)**

(Commission of Appeals of Texas, Section B.
Oct. 14, 1925.)

1. **Banks and banking ⬅➡161 (3)—Bank accepting exchange in payment of a check presented to it for collection is liable for resulting loss.**

Where a bank accepting a check for collection from a depositor took in payment thereof exchange of drawee bank, it is liable for resulting loss under rule that a bank acting as collecting agent, in absence of contract to contrary, is without authority to accept for debt of principal anything other than money or its equivalent.

2. **Appeal and error ⬅➡931 (4)—Finding of custom by trial court will not be imputed, where it failed to consider evidence on which custom was based.**

In action to recover amount of check deposited with bank for collection, in payment of which it accepted a check instead of cash, where evidence showed that testimony of defendant with reference to custom of accepting checks in settlement of accounts between banks was not considered for any purpose by trial court, a finding of such custom will not be imputed to the trial court.

3. **Banks and banking ⬅➡15 — Finding that plaintiff was not damaged by collecting bank's acceptance of a check of drawee bank as payment of plaintiff's check held erroneous.**

In action to recover amount of check given defendant for collection, on which it accepted a check as payment from drawee bank, which failed, a finding by trial court that plaintiff had sustained no damage since his claim was maintainable against bank guaranty fund was erroneous, since, if defendant's acts amounted to payment of plaintiff, he was no longer a depositor of drawee bank, and has no interest to be protected by guaranty fund.

4. **Appeal and error ⬅➡1175 (7)—Judgment for plaintiff on reversal of judgment for defendant held properly refused.**

Where court reverses a judgment for defendant, it will not enter judgment for plaintiff, where record shows a theory on which judgment for defendant might be given on another trial.

Error to Court of Civil Appeals of Eighth Supreme Judicial District.

Action by George T. Slone against the First National Bank of Gorman. A judgment of the Court of Civil Appeals (260 S. W. 948) affirmed a judgment for defendant, and plaintiff brings error. Reversed and remanded for new trial.

D. K. Scott and R. R. Holloway, both of Cisco, for plaintiff in error.

Turner, Seabury & Springer, of Eastland, for defendant in error.

SPEER, J. Plaintiff in error sued the defendant in error to recover the sum of $1,-000, the amount of a check drawn by him upon the Farmers' State Bank & Trust Company of Gorman, Tex., and deposited with defendant in error, the petition alleging that the plaintiff in error received its deposit slip for said amount and the same was credited to him, and that afterward the defendant bank, in clearing with the state bank, collected the same either in cash or exchange from said Farmers' State Bank & Trust Company, and thereupon became liable to plaintiff in error in the amount of said deposit, for which he prayed judgment.

The defendant tendered the issue that there was a general custom of the banks in Gorman that checks were accepted for deposit subject to collection, and, if not collected, the item was charged back to the customer, and further alleged a custom amongst the banks of Gorman to settle their mutual accounts daily through the clearing house, accepting checks for any balance one way or the other.

The cause was tried by the court, who filed his findings and conclusions as follows:

#### "Findings of Fact.

"(1) I find that prior to January 24, 1921, plaintiff was a customer of and had on deposit money in the Farmers' State Bank & Trust Company and First National Bank of Gorman. That several months prior to the date above plaintiff came to the office of defendant, and discussed with its president, Ben F. Read, the financial condition of the Farmers' State Bank & Trust Company, and that similar conversations ensued between said plaintiff and Read on six or eight other occasions prior to January 24, 1921. That on each of these occasions, when the solvency of the Farmers' State Bank & Trust Company was discussed by plaintiff and Read, the latter advised plaintiff that he, plaintiff, knew as much about the condition of the Farmers' State Bank & Trust Company as Read did, and also told plaintiff that rumors regarding the condition of practically all banks were afloat, and that he personally put small credence in said rumors. That on each of said occasions Read told plaintiff that the officers of the Farmers' State Bank & Trust Company were his personal friends, and that they had been congenial competitors of his in the town of Gorman, and that he would do nothing that would embarrass the financial situation of said bank. That in more than one of said conversations plaintiff told Read that his feelings toward the Farmers' State Bank & Trust Company and its officers were similar to those of Read's, and that he personally did not desire to embarrass them in their troubles. On one of the occasions of said conversations Read told plaintiff that he had courteously refused a deposit of $25,000 offered the First National Bank of Gorman from J. H. Hankins, and gave as his reason that he did not desire to aggravate the troubles of his competitor.

"(2) I find that on January 24, 1921, plaintiff had another conversation with Read in the office of defendant, in which Read and plaintiff again discussed the financial condition of

the Farmers' State Bank & Trust Company, at which time Read repeated that he would not do, or allow to be done by his employees, any act that would embarrass the Farmers' State Bank & Trust Company, and that plaintiff expressed a similar opinion to Read on said occasion. That plaintiff discussed with Read the best way to make a withdrawal of his deposit, or a portion of same, from the Farmers' State Bank & Trust Company, and prior to delivering a check or draft to Read plaintiff instructed said Read to handle the transaction in the usual way, and made no request that said draft or check be presented through the Farmers' State Bank & Trust Company and cash demanded therefor.

"(3) I find that on January 24, 1921, plaintiff presented to Ben F. Read, president of defendant, his check or draft in the sum of $1,000 on the Farmers' State Bank & Trust Company of Gorman, Tex., payable to the order of defendant, and at said time there was issued and delivered to plaintiff a duplicate deposit slip in defendant bank for said amount.

"(4) That there existed at that time a general custom among the banks at Gorman and their customers, and particularly defendant bank, which custom was known to plaintiff, to the effect that such deposits were accepted and credited subject to final collection only.

"(5) I find that on the following morning of January 25, 1921, defendant bank, in its usual and customary manner, and at the usual and customary time, cleared with the Farmers' State Bank & Trust Company of Gorman, Tex., and in addition to the $1,000 draft of plaintiff's there were included in said clearing some other small items aggregating something in the neighborhood of $100, which made the total amount of the clearing held by defendant bank against the Farmers' Bank approximately $1,100. That in said clearing the Farmers' Bank had some small items drawn on defendant, aggregating a total amount of about $100, which made the difference in the clearing in favor of defendant of approximately $1,000, or a few odd dollars and cents less (no witness being certain as to the exact amount), and practically the same as the amount of plaintiff's draft. For this amount, as was customary, the Farmers' Bank gave defendant bank exchange on the First National Bank of Waco, Tex., instead of cash.

"(6) That on its receipt plaintiff's $1,000 draft was canceled by the Farmers' State Bank & Trust Company and charged to plaintiff's account with said bank, where at the time he had a balance of something over $1,200 as an unsecured noninterest-bearing deposit.

"(7) That on the same morning, and within a short time after the receipt of the Waco exchange, defendant mailed direct to said First National Bank of Waco, Tex., said exchange so received. That said exchange was never in fact paid, because the Farmers' State Bank & Trust Company of Gorman had been closed by order of the commissioner of insurance and banking of the state of Texas, and the First National Bank of Waco withheld payment thereon, and defendant received at no time any proceeds from said exchange.

"(8) That at the time the Farmers' State Bank & Trust Company of Gorman delivered to defendant said exchange, and at all times thereafter, it had on deposit in the First National Bank of Waco a sum of money more than suffi-

cient to have paid and satisfied in full said exchange so received by defendant. That in a final accounting between the Farmers' State Bank & Trust Company, represented by the commissioner of insurance and banking after its failure, and the First National Bank of Waco, Tex., said Farmers' State Bank & Trust Company of Gorman received credit for the final amount of said exchange, upon which payment was refused by said Waco bank.

"(9) I further find that at the time the draft for $1,000 was deposited by plaintiff with defendant, at time it was cleared, at the time the Farmers' State Bank & Trust Company closed its doors, and at the time its assets were taken over by the commissioner of insurance and banking, said Farmers' State Bank & Trust Company had in its hands in cash funds in excess of $1,000.

"(10) That on January 27, 1921, the First National Bank of Waco notified defendant that said exchange was not paid and the reason therefor. On Friday, January 27, 1921, plaintiff called at the office of defendant, and asked E. B. McMahon if his draft had gone through, and said McMahon, cashier of defendant, advised plaintiff that it did not, as he had just finished a telephone conversation with Waco, in which conversation he had been advised that the exchange was not paid, and that his draft would have to be charged back to him on his account. That, after the First National Bank of Waco refused to pay said exchange, defendant charged back to plaintiff's account his $1,000 draft on said Farmers' State Bank & Trust Company.

"(11) I further find that plaintiff has filed no claim with the commissioner of insurance and banking of the state of Texas for said sum of $1,000 as an unsecured depositor in the Farmers' State Bank & Trust Company.

"Conclusions of Law.

"I conclude, as a matter of law, that the relationship of principal and agent began on January 24, 1921, and existed throughout the transaction between plaintiff and defendant. That the relationship of creditor and debtor never existed between plaintiff and defendant, because defendant never received the actual money from the check or draft delivered by plain to defendant for deposit. That the state guaranty fund alone received the full benefit of the funds represented by said draft, and that plaintiff's claim is rightfully maintainable against the bank guaranty fund of the state of Texas, and its administrator, the commissioner of insurance and banking of the state of Texas. That plaintiff has sustained no damages by virtue of any act of his agent, the defendant, in the transaction."

Upon appeal by the plaintiff, the Court of Civil Appeals approved the findings of the trial court and affirmed the judgment.

[1] In the absence of contract to the contrary, it seems to be well settled that a bank acting as collecting agent for its customer is without authority to accept for the debt of his principal anything other than money or that which passes at par as such. In Federal Reserve Bank v. Malloy, 264 U. S. 160, 44 S. Ct. 296, 68 L. Ed. 617, 31 A. L. R. 1261, it is said:

"It is settled law that a collecting agent is without authority to accept for the debt of his principal anything but 'that which the law declares to be a legal tender, or which is by common consent considered and treated as money, and passes as such at par' * * *. The rule applies to a bank receiving commercial paper for collection, and if such bank accepts the check of the party bound to make payment and surrenders the paper, it is responsible to the owner for any resulting loss * * *. It is unnecessary to cite other decisions since they are all practically uniform."

[2, 3] Indeed, it is conceded by defendant in error that such is the rule, but it seeks to bring itself within a well-recognized exception; that is, that there was a custom and usage amongst the banks of Gorman to adjust their accounts through the clearing house and accept members' checks for any credit balance due.

The defendant in error alleged in its answer that it was instructed by the plaintiff to handle his draft in the usual and customary manner, and there is in the record evidence to support such allegation. The trial court has found in the fourth paragraph of his findings that there existed a general custom among the banks at Gorman and their customers, and particularly defendant bank, which custom was known to plaintiff, to the effect that such deposits were accepted and credited subject to final collection only. But the court has made no finding that the plaintiff knew of any custom with respect to accepting checks as payment either through the clearing house or otherwise. On the contrary, the record discloses through bills of exceptions given to the plaintiff that the testimony offered by the defendant with reference to such custom was not considered by the court for any purpose. So that, we are not at liberty to impute to the trial court a finding that the custom of the Gorman banks was to settle their accounts by accepting members' checks through the clearing house. It is clear from the trial court's conclusions of law that he predicated his judgment upon two theories: First, that the relationship of creditor and debtor never existed between plaintiff and defendant; and, second, that the plaintiff had sustained no damage by reason of any act of the defendant, since, as the trial court thought, the plaintiff's claim was rightfully maintainable against the bank guaranty fund of the state of Texas. But, as we have stated, in the absence of contract to the contrary, either express or implied, the defendant in error had no right to accept from the Farmers' State Bank & Trust Company anything other than money or its equivalent in payment of plaintiff in error's check, and, having done so, it became debtor to plaintiff in error for the amount of any loss which he might sustain thereby, and, of course, if the act of defendant in error in accepting the check or draft of the Farmers' State Bank & Trust Company amounted to payment, then clearly plaintiff in error was no longer a depositor with the Farmers' State Bank & Trust Company, and would have no interest to be protected by the bank guaranty fund of the state.

[4] It follows that the judgments of the trial court and the Court of Civil Appeals should be reversed. We are not at liberty, however, to render judgment here, inasmuch as there is a theory shown by the record and mentioned by the Court of Civil Appeals upon which, upon another trial, a judgment for the defendant in error might be given. The issue that plaintiff in error expressly contracted with defendant in error to handle his check in the usual and customary way is tendered by the pleadings and the evidence, and, of course, whether plaintiff in error actually knew what this usual and customary way was would be immaterial, if such custom was expressly made part of his contract. It would nevertheless govern the rights of the parties. But, as already indicated, the case has not been tried upon that theory, and we are not at liberty to impute to the trial court an intention to rest the decision upon any such theory.

We therefore recommend that the judgments of both courts be reversed and the cause remanded for another trial not inconsistent with this opinion.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court. We approve the holding of the Commission of Appeals on the questions discussed in its opinion.