THE FIRST NATIONAL BANK OF WICHITA FALLS V. ETHEL I. McCAMEY ET VIR.

No. 6854. Decided June 9, 1937.
Rehearing overruled July 28, 1937.
(105 S. W., 2d Series, 879.)

*J. T. Montgomery* and *Kilgore & Rogers,* of Wichita Falls, for plaintiff in error.

*Bert King,* of Wichita Falls, *Wm. N. Bonner* and *Virgil Childers,* both of Houston, and *Charles Morgan,* of Fort Worth, for defendants in error.

MR. JUDGE MARTIN delivered the opinion of the Commission of Appeals, Section B.

The Honorable Court of Civil Appeals makes the following statement in this case:

"At different times from June 15, 1926, to October 1, 1926, both dates inclusive, McCamey & Sheerin, a copartnership composed of James W. McCamey and John J. Sheerin, became indebted to the First National Bank of Wichita Falls, Tex. (hereinafter called 'the bank'), as evidenced by notes as follows: June 15, 1926, due 90 days after date, $30,000; August 5, 1926, due 90 days after date, $30,000; September 8, 1926, due on demand, $10,000; October 1, 1926, due on demand, $7,500. Said notes, other than the $7,500 note, in the blank for listing collateral security stated the security to be as follows: $30,000 note of June 15th, 'Assignment of approximately $150,000 worth of oil'; $30,000 note of August 5, 'Assignment of oil runs.' The $10,000 note of September 8th, 'Assignment of contract with Empire Gas & Fuel Company.' The $7,500 note of October 1, 1926, contained no mention of collateral security. At the time of the execution of the first note, Ethel Irene McCamey, wife of James W. McCamey, was the owner, as her separate property, of 7/64 of all oil to be produced from certain leases in Wilbarger County, Tex., up to $162,500 worth, less a previous assignment out of same of approximately $24,000 worth to Brit E. Cranfill. Mrs. John J. Sheerin was at the same time the owner of a like interest in the oil from the same leases. Two days after the date of the said first note, to-wit, June 17, 1926, Mrs. McCamey joined by her husband, and Mrs. Sheerin joined by her husband, each executed separate transfers to said bank of oil runs out of the amount due to each in the sum of $30,-000. The right of the bank to receive the proceeds of oil under each of said transfers was limited as follows: 'From and after 7 o'clock A. M. June 15, 1926 until said First National Bank of Wichita Falls, Texas shall have received therefrom the full sum of $30,000.' Again, on August 5, 1926, the same day of the execution of the second $30,000 note, Mrs. McCamey, joined by her husband, and Mrs. Sheerin, joined by her husband, executed each another separate transfer of $30,000 worth of the oil runs out of said interests. The transfer by Mrs. McCamey referred to the former transfer of $30,000 worth of oil, as well as the transfer to Brit E. Cranfill, and stated the subject-matter of the transfer as follows: 'All and singular, all of our undivided seven sixty-fourths (7/64ths) of the oil produced and saved from the above described premises from and after seven o'clock A. M. June 15, 1926, until said First National Bank of Wichita Falls, Texas, shall have received therefrom the further and additional sum of Thirty Thousand Dollars ($30,000) in

addition to the amount referred to in the assignment to the said Brit E. Cranfill, and in addition to the amount to be paid under the former assignment executed by the said James McCamey and Ethel McCamey to the First National Bank of Wichita Falls, Texas, as of date June 17, 1926, and above referred to.'

"Prior to January 25, 1927, the bank, under said assignments, had collected the proceeds from the sale of oil, and applied same in full payment of the two $30,000 notes, the $10,000 note, and the $7,500 note, with the exception of a balance of about $1,-716.90 on the latter, which was applied on January 27, 1927. On January 25, 1927, James W. McCamey and wife, Mrs. James W. McCamey (Ethel Irene McCamey) executed to the bank their joint note for $52,250, due six months after date, with interest at 8 per cent. per annum from maturity, in consideration of the receipt by them of a $50,000 loan. At the same time, Mrs. McCamey, joined by her husband, executed to said bank another transfer of oil runs out of her said interest 'after 7 o'clock A. M. June 15, 1926.' The transfer provided that said bank 'shall have and receive therefrom all sums of money that may be due and owing to said bank *from us, either at this time incurred, or hereafter to be incurred,* and we do hereby set over, convey and assign unto said First National Bank of Wichita Falls, Texas, all and singular, the entire sum of money to be paid us out of oil from said property, together with all rights, titles, interests, and estate in and to the above described lands that we may be entitled to by virtue of our ownership of funds to be derived from oil produced therefrom. To have and to hold unto the First National Bank of Wichita Falls, Texas, its successors and assigns, forever, *so long as we, or either of us, are indebted to said First National Bank in any amount,*' etc. (Italics ours.) As the proceeds of oil covered by said assignment were received by the bank, the amounts were written on the back of the note, and at the maturity of the note were all credited on the principal, and a renewal note given to include the balance with the addition of interest to the maturity date of the renewal note. Several such renewals were made, each note providing for the payment of interest after maturity. The last renewal, dated April 6, 1932, with interest to maturity included, was for the principal sum of $5,998.80, due 90 days after date.

"This suit was brought after all the transactions above stated by Mrs. Ethel Irene McCamey, joined pro forma by her husband, James W. McCamey, to recover of the bank as for conversion the amount of oil runs applied in payments of one-half each of the $10,000 note and $7,500 note, and $50 for interest on same, amounting to $8,800. There was also asserted a claim of $944.87

for the bank's failure and refusal to adjust interest charges upon payments made upon notes (by receipt of the oil runs) before maturity of the notes. Plaintiffs also claimed the sum of $2,616.54 by reason of interest charges in excess of 8 per cent., as provided in the note. The bank joined issue upon all plaintiffs' claims and asserted a cross-action, or counterclaim for a balance due on the last-named renewal note for the original sum of $5,998.80, with interest and attorney's fees, and for a foreclosure of the lien upon the interest of Mrs. McCamey described in said assignments. The court upon a nonjury trial denied plaintiffs any recovery, and gave judgment for the bank upon said note for the balance due thereon, with interest and attorney's fees, amounting to $3,129.65, and decreed the foreclosure sought." 75 S. W. (2d) 910.

That opinion sufficiently discloses the theory of the trial court and that of the Court of Civil Appeals upon which each disposed of the case.

We are of the opinion that the present record shows another theory of defense within the pleadings and raised by the evidence, which was ignored by the trial court before whom this case was tried, and that the action of the Court of Civil Appeals in reversing and rendering the present case instead of remanding it, was error and in conflict with the case of Slone v. First Natl. Bank of Gorman, 276 S. W. 209, (Tex. Com. App.). See also Citizens Natl. Bank of Lubbock v. Adams, 67 S. W. (2d) 421, and authorities there cited. It was held in the Slone case, supra:

"Where court reverses a judgment for defendant, it will not enter judgment for plaintiff, where record shows a theory on which judgment for defendant might be given on another trial." (Syllabi quotation.)

The facts and circumstances of this case present the following defensive theory: McCamey and Sheerin were partners in the oil business and needed immediate cash. Their respective wives owned each in her own right a large amount of oil runs payable in the future. Each husband on two different occasions borrowed from his wife $30,000 for use in the partnership business, or a total of $120,000. To make the needed cash immediately available, their wives executed to the bank contemporaneously with the dates of said loans, or approximately so, assignments of oil runs in the same amount of said loans, as set out above. These were pledged either by the husbands jointly, or by the partnership, for the payment of all the notes described above. The assignments by Mrs. McCamey were unconditional assignments to the bank. Each read in part:

" * * * have sold, transferred, conveyed and by these presents do sell, transfer, convey and assign unto the said First National Bank of Wichita Falls, Texas, all and singular, all of our undivided seven-sixty-fourths (7/64) of the oil produced and saved from the above described premises from and after seven o'clock, A. M., June 15th, 1926, until said First National Bank of Wichita Falls, Texas, shall have received therefrom the full sum of Thirty Thousand Dollars * * *

"To HAVE AND TO HOLD unto the First National Bank of Wichita Falls, Texas, its successors and assigns, forever; and we do here now warrant the title to the foregoing amount to be paid out of oil as aforesaid against the lawful claims of any and all persons whomsoever lawfully claiming or to claim the same or any part thereof."

There is no reference therein to any debt, or any pledge. Upon its face each conveyed full legal title to the bank of the oil therein described. Obviously they did not contain the necessary elements of a pledge. These are:

"The necessary elements of a pledge are: (1) A pledgor and a pledgee. (2) A debt or obligation. (3) A contract of pledge. And in order to constitute a contract one of pledge the following elements are necessary: (1) The possession of the pledged property must pass from the pledgor to the pledgee or to some one for him. (2) The legal title to the pledged property must remain in the pledgor. (3) The pledgee must have a lien on the property for the payment of a debt or performance of an obligation due him by the pledgor or some other person. (4) There must be a right of redemption in the pledgor." 49 C. J., p. 900, Sec. 13.

The Court of Civil Appeals holds in effect that these assignments, together with the accompanying facts and circumstances, show they were only a pledge of security for certain notes, which did not include the notes in controversy. Rather we think the inference is a fair, if not a compellable one, that these assignments were intended to pass the complete beneficial title to the husband, McCamey, so as to make effective immediately the previous loan to him of cash.

If complete and unconditional title to the property therein described had passed out of the wife, how could there be any liability to her for a conversion of her separate estate as alleged and claimed in this case?

To state it otherwise, the issue is clearly raised, if not conclusively proven, that the parties selected this method of passing to the husband for immediate use the beneficial title to the prop-

erty described in such instruments. In substance, but not in form, the wife transferred to the husband her interest in oil runs to the extent named for immediate use in the partnership ventures of McCamey and Sheerin.

As we understand the record it is not denied that these oil runs were pledged either by the two partners personally, or by Sheerin for the partnership for the payment of all notes described above. There apparently existed an issue as to the authority of the partner to so pledge them for a partnership debt. The above issues were ignored by the trial court, and. a judgment entered upon an erroneous theory.

The Court of Civil Appeals reasons from the hypothesis that these assignments were only pledges of security. The oral evidence raised such issue, but the record convincingly raises also the issue above discussed. If we assume as true the latter theory, an hypothesis exists for an opposite conclusion from that reached in the opinion of that court.

Judgment of the trial court and Court of Civil Appeals reversed and cause remanded.

Opinion adopted by the Supreme Court June 9, 1937.

Rehearing overruled July 28, 1937.