**McALLEN STATE BANK, Petitioner,**

**v.**

**TEXAS BANK & TRUST COMPANY,**
**Trustee, Respondent.**

**No. B-785.**

Supreme Court of Texas.

July 24, 1968.

Rehearing Denied Oct. 2, 1968.

Strasburger, Price, Kelton, Martin & Unis, Wilson Herndon, Dallas, Kelley, Looney, McLean & Littleton, Ralph L. Alexander and D. F. Martinak, Edinburg, for petitioner.

Berman & Fichtner, Jay S. Fichtner, Dallas, for respondent.

SMITH, Justice.

Republic National Bank of Dallas, as trustee of a life insurance trust set up by R. D. Welch, Jr., instituted this suit for the proceeds of an insurance policy on the life of Welch against the insurer and against McAllen State Bank. After filing suit, Republic National Bank resigned as trustee of the life insurance trust; Texas Bank & Trust Co. was substituted for it as trustee and as plaintiff in this law suit. Texas Bank & Trust Co., hereinafter referred to as the Trustee, claimed the proceeds of the policy as successor to the named beneficiary of the policy, Republic National Bank. McAllen State Bank, hereinafter referred to as the Bank, assert-

ed a claim to the proceeds on the basis that the policy was pledged to the Bank as security for a loan made to Welch. The insurance company paid the disputed funds into the registry of the court and was dismissed from the suit. The trial court heard the case without a jury and entered judgment for the Trustee. The Court of Civil Appeals affirmed. 423 S.W.2d 932. We granted the writ to review the Court of Civil Appeals holding that the rights of a beneficiary to the proceeds of a life insurance policy are superior to the rights of a pledgee. We reverse the judgments of the Courts below and render judgment for the McAllen State Bank.

Basically, the facts are these. On December 29, 1962, R. D. Welch, Jr., executed a $10,000 note payable to the Bank. The note provided: "And I * * * hereby *pledge* first, as security therefor, and second as security for any other debt or liability I * * * may owe or hereafter owe to said bank F/S [Financial Statement] and Death Benefit Life Insurance. * * * (Emphasis added.) No insurance policy was delivered to the Bank at that time. On August 1, 1963, the December note was paid and a new note was executed by Welch. This second note contained the same pledge provision quoted above. On September 24, 1963, a third note for $10,000 was executed by Welch. This note, on which the Bank predicates its claim to the proceeds of the life insurance policy, did not state that insurance was "pledged" to the Bank. It did state, however, that the third note was a renewal of the second note and that death benefit life insurance was collateral for the third note. Although the Bank predicated its suit upon the third note, it introduced in evidence the three notes to establish that Welch had pledged the insurance policy to secure the indebtedness.

At the time of execution of the third note, the Bank requested, and again Welch agreed to furnish the Bank, a term death benefit life insurance policy. Welch again did not deliver a policy to the Bank at the time of execution of the third note. There is evidence in the record that the Bank made numerous requests for the life insurance policy, which Welch finally delivered in August, 1964. The policy delivered to the Bank was for the principal sum of $10,000. It provided that the Bank was the primary beneficiary of the policy, that the owner of the policy [Welch] had the right to change the beneficiary, and that the owner had the right to make an assignment of the policy. In September, 1965, nearly a year after the policy was delivered to the Bank, while the policy was still in possession of the Bank and while the underlying note was overdue and unpaid, Welch changed the beneficiary of the policy to the Trustee. The Bank was not notified of the change of beneficiary. Welch died shortly thereafter.

The Court of Civil Appeals has held that the rights of a beneficiary to the proceeds of a life insurance policy are superior to the rights of a pledgee to the proceeds. According to the Court of Civil Appeals, "assuming *arguendo* that the policy was pledged, appellant [the Bank] must be said to have taken it [the policy] as it was written, including the unrestricted right of the insured to change the beneficiary without surrendering the policy. The only vested right which appellant [the Bank] can be said to have acquired in the policy was to demand payment of the proceeds, to the extent of its claim against Welch, *provided it was still the beneficiary of the policy at the time of Welch's death*."

■ We disagree with this analysis. Contrary to the reasoning of the Court of Civil Appeals, if the Bank is a pledgee of the policy, the Bank need not be listed as the beneficiary of the policy at the time of maturity. This is so because the interest that an assignee of pledgee of a policy acquires in the policy is different from the interest that a beneficiary has in the policy. It is entitled to the proceeds to the extent of the underlying debt which the policy secures; when that debt is paid, the interest of the pledgee or assignee in the policy is extinguished. Goldbaum v. Blum, 79 Tex. 638, 15 S.W. 564 (1891); Lewy v.

Gilliard, 76 Tex. 400, 13 S.W. 304 (1890); Cawthon v. Perry, 76 Tex. 383, 13 S.W. 268 (1890). The beneficiary, on the other hand, has an interest in the policy in the nature of an expectancy which matures into a vested right on the death of the insured.

Because of the difference in the nature of the interests that a beneficiary and a pledgee have in a life insurance policy, it is necessary for us to determine the relative rights to the proceeds of a pledgee and a beneficiary. It is stated in 46 C.J.S. Insurance § 1169a, at p. 51:

"The assignment or pledge of a policy as security creates a lien on the proceeds on behalf of the assignee. * * * While some authorities limit the rule, it is generally held that the rights of an assignee under a valid assignment of the policy for security are superior to those of the beneficiary to the extent of the indebtedness secured where the policy provides that insured has the right to change the beneficiary, especially where the beneficiary joins in the assignment; but the beneficiary is entitled to the excess of the proceeds over the amount of the indebtedness secured."

A case directly in point is Detroit Life Ins. Co. v. Linsenmier, 241 Mich. 608, 217 N.W. 919 (1928). In that case, the insured made his sister the beneficiary of his life insurance policy. Shortly prior to his death, the insured made an attempt, which the trial court held was effective, to change the beneficiary of the policy to his mother. The sister, however, refused to surrender possession of the policy. After the insured's death, the sister and mother both claimed the proceeds of the policy. The Court stated the sister's contentions as follows:

"The appellant Mrs. Cleo. Linsenmier [the sister] claimed that she was not only the beneficiary under this policy by reason of the change made in March, 1926, but that she held a vested interest in said policy because it had been orally assigned to her at the time by her brother to secure to her the repayment of sums of money theretofore advanced to or paid out for the brother and payment to her for subsequent service rendered to him or expenditures thereafter made by her in his behalf. While the exact amount is not disclosed in the record, there is proof that the sister expended several hundred dollars in behalf of the insured."

The Court held:

"* * * that while the insured had the right and power to terminate whatever interest the appellant had as a beneficiary under this policy, he could not cut off her vested interest as an assignee."

In the case of Davis v. Modern Industrial Bank, 279 N.Y. 405, 18 N.E.2d 639, 135 A.L.R. 1035 (1939), the New York Court of Appeals, in considering this very problem, stated persuasive policy reasons for holding that the rights of an assignee to the proceeds of a policy are superior to the rights of a beneficiary. In so holding the Court said:

"From an every day, practical standpoint it is desirable to hold that an assignee of a policy containing a clause permitting a change of beneficiary and an assignment of the policy secures a right in the proceeds of the policy superior to the rights of the named beneficiary. If an assignee, in the absence of the consent of the beneficiary, does not obtain such right it will be practically impossible for an insured to borrow on a policy in time of need of financial aid in those cases where compliance with the form prescribed in the policy cannot be followed. No bank or individual would be likely to lend on the security of a policy where the right to enforce the reduction of the security to cash would only mature in case the insured outlived the beneficiary, * * *"

■ We agree with these authorities and hold that an assignee or pledgee of a

policy in which the insured has reserved the right to change the beneficiary has a right to the proceeds of the policy superior to that of a beneficiary. Farracy v. Perry, 12 S.W.2d 651 (Tex.Civ.App.1929, writ ref'd); Blackman v. Praetorians, 256 S. W.2d 990 (Tex.Civ.App.1952, writ ref'd, n.r.e.); McNeill v. Chinn, 45 Tex.Civ.App. 551, 101 S.W. 465 (1907, no writ); Detroit Life Ins. Co. v. Linsenmier, 241 Mich. 608, 217 N.W. 919 (1928); Davis v. Modern Industrial Bank, 279 N.Y. 405, 18 N.E.2d 639, 135 A.L.R. 1035 (1939). See also 46 C.J.S. Insurance § 1169a; 17 Couch on Insurance 2d, § 63:433; Annot., "Rights and remedies of beneficiary after death of insured who had pledged policy to secure debt," 83 A.L.R. 77 (1933); and Annot., 160 A.L.R. 1389 (1946), and the many cases cited therein.

■ The Court of Civil Appeals found it unnecessary to determine whether the Bank was a pledgee of the policy because of its holding that the beneficiary must prevail. Having disagreed with that holding, we must make a determination of whether the Bank occupies the status of a pledgee of the life insurance policy. The record conclusively demonstrates that the policy was pledged to the Bank. By the execution of the first two notes, Welch specifically agreed to pledge an insurance policy to the Bank. An agreement to pledge property not yet in existence is a contract to pledge the goods in question, which becomes effective when delivery of the pledged goods is made. Jones on Collateral Securities §§ 38 and 39 (3d ed. 1912); 72 C.J.S. Pledges § 19(b) (1951); 41 Am.Jur. Pledge and Collateral Security § 22 (1942). This executory contract of pledge was voluntarily consummated by Welch when he secured the insurance policy and had it delivered to the Bank. Even though the third note did not contain explicit pledge language, the third note renewed the second note, which did provide for a pledge of the life insurance. In such an instance, the third note was secured by the same collateral securing the second

note. Watson v. First State Bank, 237 S. W. 1106 (Tex.Com.App.1922, jdgmt. adopted).

■ All of the elements of a pledge are present in this case. As stated by this Court in First Nat'l Bank of Wichita v. McCamey, 130 Tex. 148, 105 S.W.2d 879 (1937), the elements of a pledge are (1) a pledgor and a pledgee, (2) a debt or obligation, and (3) a contract of pledge which consists of the following: (a) possession of the pledged property passing from the pledgor to the pledgee; (b) legal title of the pledged property remaining in the pledgor; (c) the pledgee having a lien on the property for the payment of the debt; and (d) a right of redemption of the property in the pledgor.

■ It is undisputed that Welch owed a valid debt to the Bank. A contract of pledge is demonstrated by the language of the three notes Welch executed. Possession of the insurance policy passed from Welch to the Bank. Welch retained legal title in the policy, as evidenced by the fact that he changed the beneficiary of the policy after he gave possession of the policy to the Bank. Also, it is clear from the language of the notes and from correspondence introduced into evidence that the policy was given to the Bank to secure the note and that the Bank was to have a lien on the policy for the payment of the debt. In view of these facts, we hold that the life insurance policy in question was pledged to the Bank.

Respondent, the Trustee, relies on the case of Spiro State Bank v. Banker's Nat'l Life Ins. Co., 69 F.2d 185 (8th Cir. 1934), in support of its contention that the policy was not pledged to the Bank. In *Spiro,* the dispute, as here, was between a creditor of the insured and the beneficiaries of a life insurance policy taken out by the insured. In that case the court held that the evidence did not show an agreement by the insured to assign his life insurance policy to the Bank. The following excerpts from the *Spiro* case demonstrate the distinguish-

ing features of that case from the case at bar:

"Terrell [the banker] never asked for an assignment of the insurance or *for possession of the policies,* and no record of the bank shows any assignment or pledge of the policies or that the bank had any interest in them whatever." (Emphasis added.) 69 F.2d at 187.

\*   \*   \*   \*   \*   \*

"But the testimony upon which the bank relies negatives any intention on the part of McCann to assign the policies to the bank and indicates only an understanding, agreement, or representation *that the policies would be made payable to McCann's estate for the benefit of all his creditors.* Furthermore, the improbability, unreasonableness, and unsatisfactory character of the testimony of Terrell and Conn prevents our reliance upon it." (Emphasis added.) 69 F.2d at 188.

\*   \*   \*   \*   \*   \*

"At the very least, if any such agreement had existed as the bank claims, the bank would have required that the policies be delivered to it, so that it might see that the premiums were paid when due and its rights protected against assignments and changes of beneficiaries. The truth, we think, is obvious. There was no such agreement as claimed." 69 F.2d at 188.

We come now to the judgment to be entered in this case. The record shows that the insurance company paid the proceeds of the policy, $9,718.92, into the registry of the trial court. The court ordered that this sum be deposited in a savings account to accumulate interest pending final disposition of this case. The proceeds of the policy do not exceed the amount due on Welch's note which the policy was given to secure. We reverse the judgments of the courts below awarding the fund to the Trustee and enter judgment for the Mc-Allen State Bank for $9,718.92, plus accumulated interest. All costs are adjudged against the Trustee.