Dwight PARKS et al., Appellants,

v.

Victor FRANKFURT et al., Appellees.

No. 7312.

Court of Civil Appeals of Texas,
Beaumont.

Jan. 20, 1972.

Rehearings Denied Feb. 24, 1972.

See also 465 S.W.2d 846.

**718**

Dunnam, Dunnam & Dunnam, Mike Beard, Waco, for appellants.

Wynne, Jaffee & Tinsley, Roy P. Cookston, Edwin A. Nesbitt, Dallas, for appellees.

KEITH, Justice.

The appeal is from a judgment rendered after the trial court had entered an interlocutory judgment as to one phase of the controversy and granted a peremptory instruction as to the remainder of the cause. At stake is the ownership of a promissory note secured by a deed of trust upon real property. The title to the note in turn depends upon the construction given by the court to a certain security agreement under the peculiar facts of this case. Subsidiary

issues as to indemnity between the parties are also presented. Because of the confused and involved nature of the transactions making up our record, we will refer to the parties by their respective names rather than in the posture they occupy in the cause.

Frankfurt executed and delivered to Union Central Life Insurance Company his note in the principal sum of $300,000 secured by a deed of trust upon an apartment complex in Dallas. This note, which we will hereafter refer to as the "first lien note" was payable in monthly installments and is the note involved herein. Frankfurt sold the apartments to Worldwide Development Corporation (hereinafter "Worldwide") and it assumed the first lien obligation. Worldwide also executed a note of approximately $125,000 payable to Frankfurt. A few months later, Worldwide executed a deed conveying the apartments to one Harry Wilson who assumed the payment of both the first and second lien notes secured by a second lien.

On October 30, 1969, Dwight Parks, on behalf of Worldwide, negotiated a demand note with National Bank of Commerce of Dallas (hereinafter "NBC") in the principal sum of $225,000 for the express purpose of purchasing the first lien note from the insurance company which then held the obligation. Parks individually guaranteed Worldwide's obligation to NBC and it was additionally secured by the first lien note and deed of trust.

Shortly thereafter, Frankfurt began litigation against Parks, Worldwide, Wilson and others claiming that the parties were attempting foreclosure of the first lien because of Wilson's alleged default, with the avowed purpose of extinguishing Frankfurt's second lien. NBC desired to avoid involvement in this litigation with Frankfurt and demanded that Worldwide and Parks take out the first lien note. On December 1, 1969, Parks and an official of NBC "re-worked" the original October 1969 loan to Worldwide which was guaran-

teed by Parks. This was done in substantially this manner: The original Worldwide note was stamped "paid"; the security agreement dated October 30, 1969, wherein the first lien note was pledged, was torn up; Worldwide, through Parks, executed a new note in the amount of $225,000, showing "stock" to be pledged as security; several collateral security agreements were executed assigning to NBC as pledgee shares of stock in several corporations; a new security agreement was executed by Worldwide to NBC to secure the new note; NBC's officer handling the transaction wrote across the back of the first lien note: "The within note is hereby assigned to Worldwide Development Corporation without recourse on the National Bank of Commerce of Dallas, Texas"; NBC delivered to Parks the deed of trust securing the first lien, the original assignment of the same to NBC which had been executed theretofore by Worldwide, the title policy on the apartments and the appraisal report thereon.

In addition, NBC delivered to Parks a photocopy of the first lien note and a receipt therefor. This receipt was headed up "Safekeeping Department, National Bank of Commerce of Dallas, Dallas, Texas," was dated December 1, 1969, and disclosed that the note was "Deposited By" Worldwide. Opposite this notation a blank space was left where the words "Pledged To" appeared. This instrument was marked "NON NEGOTIABLE AND NON TRANSFERABLE."

NBC offered testimony to the effect that the stocks tendered by Parks as security under the new agreement of December 1, 1969, were of little, if any, value. Having discovered these facts, the bank official handling the transaction had typed across the face of the carbon copy of the safekeeping receipt these words: "Must have signed consent from Kent Comer or Harry McCaffery for release." This was done without advising Parks of such action. Under normal conditions, and in the absence of the special instructions typed upon

the Bank's copy of the receipt, NBC would have delivered the note to the person named in the receipt upon proper identification.

The security agreement executed by Parks contained this language upon which NBC now relies:

"'Debtor' . . . hereby grants to NATIONAL BANK OF COMMERCE OF DALLAS, hereinafter called 'Bank', a *security interest* in all instruments, documents, chattel paper, contract rights, general intangibles, goods and other personal property of Debtor of every kind and character, including money (whether held in a general or special account, or otherwise), *now in the possession of, and at any time and from time to time hereafter delivered to or otherwise coming into the possession of, Bank* or its agents, together with all proceeds thereof and increases and profits received therefrom." (emphasis added)

NBC now asserts "that it has a validly perfected security interest in the Frankfurt [first lien] Note by virtue of a security agreement executed by Parks on behalf of Worldwide, and its actual possession of the note" under the circumstances shown above.

The fact situation became even more confused and complicated when R. R. Campbell appeared upon the scene claiming ownership of the first lien note by virtue of an assignment to him from Worldwide dated August 20, 1970. Both Parks and Campbell testified that Parks presented to him the instruments which he had received from NBC on December 1, 1969, including the safekeeping receipt heretofore mentioned. Campbell testified, and in this he was corroborated by Parks, that he delivered to Parks title and possession of materials worth $79,000, useful in the construction of mobile homes, along with shares of stock in a corporation in consideration of the execution of the assignment by Worldwide of the first lien note. NBC refused to recognize the validity of this assignment

claiming its "security interest" therein. Campbell then brought suit against NBC, Parks, Worldwide, Frankfurt, and Del-Midwest, Inc. (one of Parks' corporations), alleging that NBC had converted the note to his great damage. He sought judgment against NBC for the value of the note, for punitive damages, a declaration that he was the owner and holder of the first lien, for judgment against Frankfurt for the face of the note and foreclosure of the deed of trust lien, an order of sale of the apartments, etc.

Campbell alleged that he was the lawful owner and holder of the first lien note, that NBC was simply a bailee in possession thereof by reason of the safekeeping receipt and had no lien or other claim thereon. He contended that by reason of the delivery of the instruments to Parks, along with the safekeeping receipt, NBC was estopped to assert any claim or interest in the first lien note.

Frankfurt had elaborate pleadings seeking affirmative relief against all of the parties heretofore mentioned, including NBC. Stripped to the essentials, the pleading charged Parks and Worldwide with fraud in the entire transaction and sought to establish Frankfurt's ownership of the apartments subject to the payment of the outstanding indebtedness due upon the first lien note. As to this latter, he asserted that the conflicting claims of NBC, Parks, Worldwide, and Campbell made it impossible for him to determine to whom payments thereon should be made.

The final judgment entered in the consolidated cause, from which this appeal is taken, recited that all parties (except Frankfurt) had disclaimed any right, title, or interest in the apartments—except that represented by the first lien note—and agreed that Frankfurt was the owner thereof subject to the first lien note. A further provision in the judgment required Frankfurt to make the monthly payments upon the first lien note to a trustee who was to hold and invest the same for the benefit of the ultimate owner thereof as determined in this litigation.

The following additional adjudications are to be found in this judgment: (1) Title and possession of the apartments was vested in Frankfurt subject to the payment of the first lien note, the amount of which was found to be $215,443.33 as of the date of the judgment; (2) the first lien note was declared valid and supported by an outstanding deed of trust lien upon the apartments and Frankfurt was required to make the payments thereon to a trustee; and (3) an interlocutory judgment theretofore entered was confirmed and incorporated into the final judgment.

In this interlocutory judgment, the court recited that the same was entered pursuant to the peremptory instruction granted in the suit between NBC, Worldwide, Parks, and Campbell, and the following adjudications were made:

(1) NBC recovered judgment against Worldwide, Parks, Del-Midwest, Inc., for $225,000 plus accrued interest of $15,000, and attorney's fees of $24,000.

(2) "The duly perfected security interest" of NBC in the first lien note was ordered foreclosed and the note ordered sold as under execution in satisfaction, or partial satisfaction, of the judgment mentioned in sub-section 1, immediately preceding.

(3) All claims of Parks, Worldwide, Del-Midwest, and Campbell "for damages and for indemnity" were denied.

Parks, Worldwide, and Campbell have appealed from this judgment.

## OPINION

NBC asserts that the points upon which the appeal is predicated are too general, saying:

"Specifically, points one, two and three of Campbell's brief and points one and two of Parks'-Worldwide's brief allege

essentially and simply that the trial court erred in deciding the cause by instructed verdict and thereby withdrawing it from the jury."

■ Admittedly, the points in the briefs of the appellants are general. We note, in passing, that the motion for instructed verdict which the trial court granted was also extremely vague and did not "state the specific grounds" as required under Rule 268. Under the liberalized briefing rules authorized by the decision of Fambrough v. Wagley, 140 Tex. 577, 169 S.W.2d 478, 482 (1943), we have determined to consider the points. The points are "sufficient to direct the Court's attention to the matter complained of" and, when we look at the points "and the statement and argument thereunder," we can and do proceed to determine the question of reversible error. Fambrough v. Wagley, supra. Cf. Malooly Brothers, Inc. v. Napier, 461 S.W.2d 119, 121 (Tex.Sup.1970).

The single, and ultimate question posed by this tangled record may be stated in this manner:

What was the nature of the interest, if any, of NBC in and to the first lien note?

NBC relies upon the general language found in the security agreement while the appellants rely upon what they contend is the specific independent promise of redelivery contained in the safekeeping receipt.

■ In passing upon the contentions of the parties, we will rely upon some well established rules of construction and interpretation. Thus, since the two instruments relied upon by the contending parties were executed simultaneously and pertain to the same transaction, they are to be considered together even though they do not expressly refer to each other. Board of Ins. Com'rs v. Great Southern Life Ins. Co., 150 Tex. 258, 239 S.W.2d 803, 809 (1951). See also, Pacific Mutual Life Insur. Co. v. Westglen Park, Inc., 160 Tex. 1, 325 S.W.2d 113, 116

(1959); Miles v. Martin, 159 Tex. 336, 321 S.W.2d 62, 65 (1959); Cowden v. Broderick & Calvert, 131 Tex. 434, 114 S.W.2d 1166, 1170 (1938).

■ It is always the primary duty of courts in construing written instruments to arrive at the intention of the parties. Skelly Oil Company v. Archer, 163 Tex. 336, 356 S.W.2d 774 (1962); or, as was said in Fox v. Thoreson, 398 S.W.2d 88, 92 (Tex.Sup.1966): "Interpretation of a written instrument is always a quest for the intention of the parties to it."

■ If it be conceded, arguendo, that there is a conflict between the two instruments relied upon by the contending parties, then we are required to harmonize such provisions, if possible. Justice Greenhill, speaking for the court in Mercer v. Hardy, 444 S.W.2d 593, 595 (Tex.Sup. 1969), said:

"Apparently inconsistent provisions of a contract must be harmonized if possible in order to effectuate the intention of the parties, and 'an interpretation will not be given to one part of a contract which will annul another part of it.' 17A C.J.S. Contracts § 309, pp. 165–166."

For, as was said in City of Pinehurst v. Spooner Addition Water Co., 432 S.W.2d 515, 518 (Tex.Sup.1968), "Generally the parties to an instrument intend every clause to have some effect and in some measure to evidence their agreement." The court continued:

"What is said in the Restatement [of the Law of Contracts (1932)] § 230 and Williston [on Contracts (1936)] § 610, is not out of harmony with the holdings of this Court that all parts of the contract are to be taken together, and such meaning shall be given to them as will carry out and effectuate to the fullest extent the intention of the parties." (Id. at p. 519)

Each party cites many authorities supporting his contention; but, in the final

analysis, the dispute centers around the concept of a pledge of the first lien note [NBC] versus a special deposit thereof [Parks-Worldwide].

NBC, relying upon the security agreement noted earlier, contends that it had a duly perfected security interest therein by virtue of the language of the instrument and its possession of the note. NBC cites Uniform Commercial Code, §§ 9.304(1) and 9.105(7), and contends that the note was pledged under the rationale of Mc-Allen State Bank v. Texas Bank & Trust Company, 433 S.W.2d 167, 171 (Tex.Sup. 1968), wherein the elements of a pledge are set out in this manner:

"As stated by this Court in First Nat'l Bank of Wichita Falls v. McCamey, 130 Tex. 148, 105 S.W.2d 879 (1937), the elements of a pledge are (1) a pledgor and a pledgee, (2) a debt or obligation, and (3) a contract of pledge which consists of the following: (a) possession of the pledged property passing from the pledgor to the pledgee; (b) legal title of the pledged property remaining in the pledgor; (c) the pledgee having a lien on the property for the payment of the debt; and (d) a right of redemption of the property in the pledgor."

Appellants contend that the safekeeping receipt issued by NBC is controlling and that it created a special deposit with NBC as a bailee of the first lien note. Reliance is placed upon Hudnall v. Tyler Bank and Trust Company, 458 S.W.2d 183, 186 (Tex.Sup.1970). There the court, contrary to the claim that NBC had a duly perfected security interest in the first lien note under the Uniform Commercial Code, said: "Neither the Texas Banking Code of 1943, the Uniform Commercial Code, nor other Texas statute appears to treat the subject of general and special deposits in banks." A footnote reference to the Uniform Commercial Code reads: "Tex.Bus. & Commerce Code, §§ 1–9, V.T.C.A." The court then continued:

" 'When money or its equivalent is deposited in a bank without any special agreement, the law implies that it is to be mingled with the other funds of the bank, the relation of debtor and creditor is created between the bank and the depositor, and the deposit is general. In such a transaction the bank becomes the owner of the fund. When, on the other hand, money or its equivalent is so deposited with an accompanying agreement that the identical thing deposited shall be returned, or that the same shall be paid out for a specific purpose, the relation thus created is not that of debtor and creditor. *Such a transaction is a special deposit, and the bank is liable only as bailee. In such a case the fund is a trust fund, the bank acquires no title thereto, and is a mere trustee for the safe-keeping, return, or disbursement of the fund, according to the special contract by which the deposit is made.'* " (458 S.W.2d at p. 186, emphasis supplied)

In discussing the special deposit rule, the textwriter in 9 C.J.S. Banks and Banking § 274, p. 565, says:

"The general or special character of an account is a question of fact, to be determined by the purpose for which the deposit was made, the relationship existing between the depositor and the bank, and the intention of the parties as expressed in their contract and as revealed by the facts and circumstances of the case, such as the words and acts of the parties and their course of business."

When we apply this rule to the undisputed facts in this case, it is clear that the original transaction between the parties was that the first lien note would be the security for the debt of Parks-Worldwide until the debt was extinguished. Through no fault of NBC, Parks-Worldwide became embroiled in a controversy with the maker of the note causing "re-working" of the original debt. Certainly, the Parks-World-

wide note was not paid by the execution of the new agreement—nor did NBC part with the possession of the first lien note theretofore specifically pledged as security. Instead, retaining possession thereof, it procured the execution of the collateral security agreement in the broad language heretofore quoted.

■ Appellants' contentions, if sustained, would be to substitute the adequate security represented by the first lien note for worthless stocks in corporations controlled by Parks. Incidentally, he makes no effort to dispute NBC's contention that such stocks were of little, if any, value. Appellants' contention would require the court to assume that NBC parted with adequate security for its loan in exchange for worthless stock. To follow this reasoning to its ultimate conclusion would require us to find that NBC did not act reasonably in the premises. It seems clear that courts will not construe a contract to mean that the parties have agreed to act contrary to what common sense and the circumstances obviously demand, unless the contract is explicit and clear in that meaning. Stool v. J. C. Penney Company, (5th Cir. 1968), 404 F.2d 562, 566; Fujimoto v. Rio Grande Pickle Company, (5th Cir. 1969), 414 F.2d 648, 654. The contract involved here does not lead to such a result.

■ We recognize and follow the rule that in an appeal from a judgment based upon a peremptory instruction, we must accept as true the evidence in the record supporting appellants' contentions. Further, all conflicts and inconsistencies must be resolved in favor of appellants, and we must draw all inferences therefrom most favorable to their alleged cause of action. Constant v. Howe, 436 S.W.2d 115, 116 (Tex. Sup.1968); Hart v. Van Zandt, 399 S.W.

2d 791, 793 (Tex.Sup.1965); Adams v. Slattery, 156 Tex. 433, 295 S.W.2d 859, 865 (1956).

■ But, neither party claims that the contract is ambiguous, so the construction of the written instrument is a question of law for the court. Myers v. Gulf Coast Minerals Management Corp., 361 S.W.2d 193, 196 (Tex.Sup.1962); City of Pinehurst v. Spooner Addition Water Co., supra (432 S.W.2d at p. 519). And, as was said in Trinity Universal Ins. Co. v. Ponsford Brothers, 423 S.W.2d 571, 575 (Tex. Sup.1968), "A jury may not be called upon to construe the legal effect of an instrument."

■ Considering all of the facts and circumstances in evidence and applying the rules of law heretofore noted, we are of the opinion that it was not error for the trial court to peremptorily instruct the jury to return a verdict in favor of NBC and against all of the appellants. ·This holding does not, however, dispose of Campbell's claim for indemnity against Parks-Worldwide. The dispute between these appellants rests upon entirely different facts and circumstances; and we note that Parks-Worldwide do not seriously contend that this facet of the case was decided properly below.

■ Therefore, we sever the claim of Campbell for indemnity against Parks-Worldwide, reverse the judgment of the trial court and remand the cause for trial as between those parties. The judgment of the trial court in favor of Frankfurt and NBC is in all things affirmed. All costs are adjudged against Parks-Worldwide, jointly and severally.

Affirmed in part and in part reversed and remanded.