**Joel E. BARNETT, Appellant,**

v.

**Peter W. MAIDA et al., Appellees.**

**No. 7533.**

Court of Civil Appeals,
Beaumont.

Dec. 13, 1973.

Donald L. Martin, William Emerson Wright, Houston, for appellant.

Benckenstein, McNicholas, Ball, Oxford & Radford, Beaumont, for appellees.

KEITH, Justice.

Plaintiff appeals from a summary judgment and we will designate the parties as they appeared in the trial court.

During the year 1958, plaintiff Barnett became interested in the construction of a shopping center in Beaumont and associated the defendants, Maida and Moor, in the venture. One Dickson was also interested in the original venture and the four parties incorporated as Stadium Center, Inc. The capital of the corporation was $1,000 and the shares were distributed equally among the four participants. Subsequently, Dickson's shares were purchased by the corporation and he disappeared from the scene about the time the shopping center was completed. There was outstanding at that time 750 shares of stock owned equally by the parties, Barnett, Moor, and Maida, with 250 shares being treasury stock.

The center was heavily mortgaged but the corporation was reasonably profitable. In 1966, Barnett, a speculative builder being pressed for money, attempted to persuade his fellow stockholders to advance corporate funds on the security of his stock, but they refused. Barnett then ap-

proached American National Bank of Beaumont (hereinafter American Bank), seeking a loan of $45,000.

American Bank agreed to loan Barnett $40,000 upon his stock in the shopping center provided he procure a "take-out" letter signed by Maida and Moor. On April 8, 1966, Maida and Moor wrote such a letter, copied in the margin.[1] On April 11, 1966, Barnett executed his note and delivered his shares of stock to American Bank indorsed in blank. Barnett did not pay the note at maturity and the Bank delivered the shares of stock to Maida and Moor upon receipt of the face of the note and accrued interest.

It is clear from the numerous depositions making up our record that Maida and Moor did not use personal funds in taking out the Barnett note. Instead, as corporate officers of Stadium, they borrowed the total amount from Lamar State Bank of Beaumont (where Maida was a director) on the credit of the shopping center corporation, using Barnett's shares of stock as collateral. Procuring a cashier's check from Lamar Bank, payable to American Bank, they obtained Barnett's stock for the purpose of pledging it to secure the corporate loan at Lamar Bank.

It is likewise clear that American Bank took no formal steps to foreclose its lien upon the Barnett shares; instead, accepting the cashier's check, it delivered the shares indorsed in blank to Maida and Moor. Eventually, this note of the shopping center was consolidated with other obligations owed by the center to Lamar Bank and it has been or is being liquidated

from revenues of the corporation, not the personal funds of either Maida or Moor.

Barnett brought suit against Maida, Moor, American Bank, and one of its loan officers seeking damages for the acts mentioned earlier herein, contending that there was a conspiracy to appropriate his stock for the use and benefit of Maida and Moor. Plaintiff made no tender of the amount of the loan or the accrued interest thereon. After extensive depositions, Barnett's amended pleadings omitted American Bank and its loan officer as parties defendant and the suit continued with Maida and Moor being the only defendants.

■ The remaining defendants presented their motions for summary judgment, relying upon the pleadings and the depositions. Barnett filed a lengthy controverting affidavit; and, the court, after a hearing, granted the motions of the defendants and this appeal has been duly perfected upon a single point of error.[2]

In moving for the summary judgment, the defendants below assumed an onerous burden under a series of recent decisions of our Supreme Court. Rather than citing again this line of controlling authorities, we merely point to the discussion found in McFarling v. Lapham, 489 S.W.2d 435, 440–441 (Tex.Civ.App., Beaumont, 1972, error ref. n. r. e.), where we had occasion to review many of the cases on the subject.

In his brief, plaintiff sets out, under a heading "Issues Raised", the following:

"Substantial fact issues that were raised by virtue of Appellees' failure in meeting their burden of proof to show a

---

1. "We understand that you have agreed to loan $40,000 to Joel E. Barnett to be secured by the assignment of his stock in the Stadium Center, Inc., this obligation to be drawn to be due and payable in one year.

"Please accept this letter as our agreement with you to repurchase this stock in the event the loan becomes delinquent and for the balance and interest owing you at such time you make demand on us for payment."

2. "The trial court erred in granting the appellees' motions for summary judgment because they failed to meet their burden of proof and establish that there is no genuine issue as to any material facts that would entitle them to judgment as a matter of law." Although the point is extremely general in nature, it is sufficient. Malooly Brothers, Inc. v. Napier, 461 S.W.2d 119, 121 (Tex.1970).

proper transfer of legal title by the American National Bank. Such issues as:

"1) Did the American National Bank conduct a judicial foreclosure?

"2) If so, was it done in a commercially reasonable manner?

"3) Did Appellees acquire any kind of legal title, or were they merely assignees of American National's security interest, with legal title remaining in Barnett?"

■ In postulating the first two "issues", plaintiff has overlooked the fact that American Bank went out of the lawsuit when he filed amended pleadings which did not name it as a party defendant. It was just as effectively dismissed from the suit by omitting its name from the amended pleadings as if a formal order of dismissal as to it had been entered of record. Brennan v. Greene, 154 S.W.2d 523, 526 (Tex.Civ.App., San Antonio, 1941, error ref.); King v. Air Express International Agency, Inc., 413 S.W.2d 838, 839 (Tex.Civ.App., Houston, 1967, no writ).

Had American Bank remained in the suit, the first two "issues" set out might have required an answer. Under our view, the real question presented by this record is what rights, if any, Barnett had in and to the stock after his default.

Barnett's transaction with American Bank had each of the elements of a pledge, as set out in First Nat. Bank of Wichita Falls v. McCamey, 130 Tex. 148, 105 S.W.2d 879, 881 (1937), and restated by the Court in McAllen State Bank v. Texas Bank & Trust Company, 433 S.W.2d 167, 171 (Tex.1968); namely:

"(1) [A] pledgor and a pledgee, (2) a debt or obligation, and (3) a contract of pledge which consists of the following: (a) possession of the pledged property passing from the pledgor to the pledgee; (b) legal title of the pledged property re-maining in the pledgor; (c) the pledgee having a lien on the property for the payment of the debt; and (d) a right of redemption of the property in the pledgor."

■ Under this accepted definition, even after default, Barnett still had legal title to the shopping center stock subject to American Bank's lien thereon. All of his right, title, and interest therein could and would have been extinguished by a public sale conducted by Bank as provided in V.T.C.A., Bus. & Com. Code § 9.501(c). But, American Bank conducted no such sale.

■ Maida and Moor, being liable to American Bank on their take-out letter, received Barnett's stock from American Bank. Under the provisions of the Code, § 9.504(e), they then became subrogated to all of the rights and duties of American Bank. It seems clear that had Barnett sought to recover the stock from the Bank, he was required to make a valid tender of the amount of the debt, plus accrued interest, as a condition precedent to his right to maintain his suit. Athans v. Jones, 277 S.W.2d 192, 193 (Tex.Civ.App., Fort Worth, 1955, no writ); 86 C.J.S., Tender § 3, p. 559 (1954); 51 Tex.Jur.2d, Rev., Part 2, Secured Transactions § 326, p. 627 (1970). See also, Baucum v. Great American Insurance Co. of New York, 370 S.W.2d 863 (Tex.1963). Since Maida and Moor were subrogated to Bank's rights, a tender was likewise required of Barnett as a condition precedent to his right to maintain his suit.

No tender was made; and, equally important, no contention is made that there was any excuse or justification for the failure to make such a tender. 55 Tex.Jur.2d, Tender § 3, p. 213 (1964).

Defendants successfully carried their onerous burden of showing that the plaintiff did not have a meritorious cause of action; and, the trial court properly granted their motions for summary judgment. The judgment is, therefore, affirmed.