Robert M. LEY, Appellant,

v.

MAIN BANK OF HOUSTON, Appellee.

No. 01–83–0427–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 29, 1983.
Rehearing Denied Jan. 19, 1984.

J. Michael Bell, Michael A. Andrews, Houston, for appellant.

William E. Matthews, Houston, for appellee.

Before EVANS, C.J., and DUGGAN and BASS, JJ.

## OPINION

EVANS, Chief Justice.

The principal controversy in this appeal involves the interpretation of an agreement to purchase certain bank stock held as collateral by a lender.

Main Bank of Houston brought this action against Robert M. Ley alleging breach of a Collateral Purchase Agreement, which required Ley, upon the occurrence of certain conditions, to purchase certain stock pledged as collateral by parties who had borrowed money from the bank and then defaulted on their loans. Main Bank assigned the cause of action to Robert C. Lanier, and after a non-jury trial, the trial court entered judgment in Lanier's favor for the sum of $134,367.03, plus prejudgment interest in the amount of $57,238.76. We affirm.

The facts for the most part are undisputed. The trial court filed ninety-seven findings of fact and entered twenty-two conclusions of law. In essence, the trial court found that the defendant Ley, together with three other persons, agreed to purchase a substantial block of stock in Fidelity Bank and Trust Co. from Robert Lanier and members of his control group, so that Ley and his associates would own the controlling interest in the bank. The parties agreed that the new control group would include Ley and his three associates, and also any person who purchased stock from any of them, and any shareholder who elected to retain his stock and join the control group. Main Bank agreed to finance purchases of Fidelity stock on the condition that Ley and his associates each promise to purchase any Fidelity stock pledged by a member of the control group and later obtained by Main Bank as a result of the default of such member on his note to the bank. This agreement between Main Bank and Ley was memorialized in a Collateral Purchase Agreement. The court found that various persons who had borrowed funds from Main Bank to purchase Fidelity stock through Ley and his associates had defaulted on their loans; that Main Bank had obtained the defaulting owners' agreement that it could retain their pledged stock, without prejudice to its right to recover the full amount of the outstanding principal debt and interest; that Main Bank had tendered such stock to Ley for purchase pursuant to the terms of the Collateral Purchase Agreement; and

that Ley had refused to purchase such tendered stock. The court further found that Main Bank had the ability to transfer the tendered stock to Ley, and the court concluded that by refusing to purchase the stock upon such tender, Ley had breached the terms of the Collateral Purchase Agreement.

On this appeal, Ley does not contest the trial court's findings on the foregoing matters. In his first point of error, he asserts that the trial court's judgment is in error because Main Bank did not conduct a foreclosure sale which, he contends, was a prerequisite to his being required to purchase the stock of a defaulting debtor. We overrule this contention.

Under the terms of the Collateral Purchase agreement, Ley

"unconditionally promises in the event of default in any payment of principal or interest when due, and if Main Bank shall foreclose the stock securing same; after thirty days written notice to Purchaser to purchase from Bank the stock so foreclosed at a price equal to the unpaid balance of principal and interest due and owing on said note, ..."

Main Bank, in return, "agrees that upon the payment of said purchase price by Purchaser to Bank," the latter "will assign and transfer said stock certificates to Purchaser without warranty of any kind." Thus, the terms of the Collateral Purchase Agreement clearly contemplated that Main Bank would be in a position to effect a legal transfer of a defaulting debtor's stock to Ley at the time that Ley became obligated to purchase such stock.

■ We construe the term "foreclose," as used in the Collateral Purchase Agreement, to mean that Main Bank would obtain and hold the legal right to assign and transfer the stock to Ley at the time the stock was tendered to him for purchase. The bank could accomplish this either by a formal foreclosure sale or, as it did, by merely accepting the borrower's surrender of the stock comprising the collateral for the loan. We do not agree with Ley's

contention that the bank was required to conduct an actual foreclosure sale, and we hold that the trial court did not err in concluding that Main Bank had "obtained possession of the stock so that it could be purchased."

Ley relies upon *Kolbo v. Blair*, 379 S.W.2d 125 (Tex.Civ.App.—Corpus Christi 1964, writ ref'd n.r.e.) which involved the validity of a non-judicial chattel mortgage foreclosure and sale of a tourist court's furnishings. There, the mortgagee had conducted a non-judicial foreclosure sale and itself purchased the collateral at private sale for a nominal price. The mortgagee then obtained a deficiency judgment for the balance of the debt, which the appellate court reversed, finding that there was insufficient evidence of a valid sale. In its opinion, the court stated that in order to pass title to the mortgaged property a sale must actually take place, and that the mere taking alone would not amount to a non-judicial foreclosure. Ley relies upon this statement in support of his contention that Main Bank could not pass title to the stock in the absence of an actual foreclosure sale. As we read the opinion in *Kolbo*, it merely stands for the proposition that a mortgage creditor must generally take two steps before suing for a deficiency judgment: (1) he must foreclose on the collateral [i.e., take possession] and (2) conduct a valid sale. We find the facts in *Kolbo* to be distinguishable from those in the case at bar. In that case, the controversy was between the debtor and the mortgagee; here there is no dispute between the defaulting debtors and the holder of the pledged collateral.

We recognize that the term "foreclose" generally contemplates a foreclosure sale of the collateral. However, that does not mean that an actual foreclosure sale must be held in every circumstance, and we must determine the rights of the parties according to the terms of their particular contract. *See, Clem Lumber Co. v. Carson*, 164 S.W.2d 572 (Tex.Civ.App.—Dallas 1942, writ ref'd). Ley did not challenge the trial court's finding that the defaulting debtors had agreed that Main Bank might retain their pledged stock without prejudice to its right to seek a deficiency judgment, and so far as the record reflects, there is no dispute between the defaulting debtors and Main Bank regarding its authority to dispose of the pledged stock. Under the terms of the Collateral Purchase Agreement, Main Bank effectively foreclosed the stock by retaining possession of the collateral and obtaining the right to effect a legal transfer of its ownership. Thus, we hold that the trial court's interpretation of the Collateral Purchase Agreement is sound, and we overrule Ley's first point of error.

We next consider Ley's contention that Main Bank's recovery is limited by law to the value of the collateral. Ley argues that Main Bank waived its right to a deficiency judgment and was restricted to a recovery of the value of the collateral, which the parties stipulated was zero. The basis of Ley's argument is Tex.Bus. & Comm.Code sec. 9.504 and 9.505 which, according to Ley "set forth the alternatives available to a secured creditor regarding collateral in his possession after a default." Ley contends that once a creditor forecloses on collateral, he may, under these sections (1) sell it and apply the proceeds against the debt in accordance with sec. 9.504(a)–(d), or (2) retain the collateral in full satisfaction of the debt as provided in sec. 9.505(b).

We do not find either of these sections applicable to the situation involved in the case at bar. The situation in this case is addressed by sec. 9.504(e), which expressly provides that:

> A person who is liable to a secured party under a guaranty, indorsement, *repurchase agreement* or the like and who received a transfer of collateral from the secured party or is subrogated to his rights has thereafter the rights and duties of the secured party. Such a transfer of collateral is not a sale or disposition of the collateral under this chapter.

(Emphasis added.)

If Ley had purchased the tendered stock in accordance with the terms of the

Collateral Purchase Agreement, he would have been subrogated to the rights and duties of Main Bank. *See, Barnett v. Maida,* 503 S.W.2d 610 (Tex.Civ.App.—Beaumont 1973, no writ). Accordingly, we are not persuaded by Ley's argument that the situation is governed by the section of the Tex.Bus. & Comm.Code upon which he relies.

█ Thus, we do not agree with Ley's contention that the bank's acceptance of stock from a defaulting owner reduced the defaulter's debt (and thus Ley's obligation under the Collateral Purchase Agreement) to zero. Ley relies upon *Tanenbaum v. Economics Lab., Inc.,* 628 S.W.2d 769 (Tex. 1982) wherein it was held that a creditor's failure to make a clear election in writing between a sale under sec. 9.504 and a strict foreclosure under sec. 9.505 gave rise to a conclusive presumption that the debtor had elected to strictly foreclose under sec. 9.505. In that case the debtor tendered the collateral to his creditor "in satisfaction," and the creditor sold it for scrap and then sued the debtor for a deficiency. Sec. 9.505 requires a secured creditor to notify a debtor in writing if it intends to strictly foreclose, and *Tanenbaum* holds only that when collateral is disposed of without such written notice, he may not pursue a deficiency judgment against the debtor.

The decision in *Tanenbaum* is not controlling in the case at bar. As we have pointed out, there is no dispute between the defaulting debtor and the holder of the pledged security regarding either the disposition of the pledged stock or the right to seek a deficiency judgment. Indeed, Main Bank neither proposed to keep stock of zero value in full satisfaction for its debt, nor sold the stock before tendering it to the appellant. Thus, neither sec. 9.505 nor the decision in *Tanenbaum* effected a release of Ley's obligation to purchase the stock under the terms of the Collateral Purchase Agreement. The second point of error is overruled.

The trial court's judgment is affirmed.